BROWNING and others *vs.* HANFORD, Sheriff of Yates Co.

A sheriff's return to process is *prima facie* evidence only of such official acts as he is by it required to perform, and not of matters which excuse their performance. *Contra,* the CHANCELLOR.

Where the sheriff leaves with the debtor in the execution, goods levied on by virtue of it, taking a receipt from a third person for their delivery on the payment of the debt, he becomes liable for their loss unless it is occasioned by the act of God or the enemies of the country. *Per Senators* PUTNAM and WRIGHT. *Contra,* the CHANCELLOR.

ERROR from the supreme court. The defendant was sued for not collecting an execution, to him directed, against one Rosenbury, for $806,24. The declaration contained two counts: the first alleged a levy upon sufficient property to satisfy the execution, and a neglect to return it; the second, a neglect to levy before the return day, although there was suffi-

cient goods of the defendant to satisfy it. The cause has been twice before the supreme court. (5 *Hill*, 588; and 7 *Id.* 120.) Upon a denial of the motion for a new trial upon the case made at the second trial, (7 *Hill*, 120,) the case was converted into a bill of exceptions, and comes before this court upon writ of error. At that trial, the plaintiffs gave in evidence an exemplification of the execution which was delivered to Babcock, the under-sheriff of the defendant, on the 21st of May, 1840, and was returnable on the first Monday of July then next. Upon its being read the defendant insisted that the return should also be read in evidence. This was objected to by the plaintiffs, but the judge admitted the same with the qualification that such part thereof as did not strictly form a part of the sheriff's return should not be used as evidence, to which ruling the plaintiffs excepted The return set forth a levy by the under-sheriff on the 21st day of May, 1840, upon a store of goods of the defendant in the execution, of sufficient value to satisfy it, and that he, there upon, took a receipt for the same from one Ellsworth, by which he agreed to deliver them on demand, or to pay the amount of the execution with costs, and left the goods in the defendant's possession : that on the 31st day of May, 1840, he was served with an order made by Hon. D. Moseley, circuit judge, staying the proceedings on the execution until the first Tuesday of August then next, and that on the 22d June, 1840, the goods, with the store in which they were levied upon, were casually consumed by fire, excepting a small portion which he had sold and upon which he had made $17,37 ; and that Ellsworth, the receiptor, was of sufficient responsibility for the same. The return was dated December 28, 1840. Evidence was given tending to show that after the levy, and before the fire, a considerable quantity of the goods had been sold, and that more of the goods were saved from the fire than were accounted for in the return. No evidence of the stay of proceedings was offered by the defendant excepting the return upon the execution. The plaintiff's counsel requested the circuit judge to charge, 1. That the return of the sheriff did not constitute a defence to the action, even if true : 2. That there was no evidence that

the defendant was stayed upon the execution; and 3. That the return of the sheriff, that the goods were destroyed by the fire, was no evidence in his favor. The circuit judge refused so to charge, and charged the jury that the return of the sheriff, if true, formed a good defence to the action, and the same was evidence for the sheriff that the goods levied on had been destroyed: that whether the goods had been saved from the fire, was a question of fact, and if they found any were saved, they should next find their value: that on that question there was no very direct evidence: the plaintiff, in any event, would not recover beyond the value of the goods saved, and those sold after the levy and before the fire: if the jury should believe any were so sold they would have to arrive at it the best way they could: that they would be warranted in taking into consideration in connexion with the other evidence, that part of the sheriff's return which stated that the goods were all destroyed, except the portion sold by the sheriff, as appeared from his return. If enough of the goods were saved from the fire to amount to the claim of the plaintiffs, then the defendant was liable for the whole: if not enough, then to the extent of the value of the goods saved from the fire, and of those sold after the levy and before the fire. The plaintiffs excepted to the refusal to charge, as requested, and to the charge as delivered. There were other exceptions taken on the trial which did not become material in the final disposition of the cause. The jury found for the defendant.

*D. B. Prosser*, for plaintiffs. 1. The circuit judge erred in permitting the defendant to read the return to the execution. It formed no part of the writ, and was in no way connected with the evidence on the part of the plaintiffs. 2. It furnished no evidence for the defendant, of the loss of the goods by the fire. It was not a valid return: it did not answer the writ: a return is only evidence of what is done by the officer, and cannot be made evidence for him of any fact going to excuse him for omitting to perform his duty. *Archbold's Pl. and Ev.* 395; 1 *Cowen and Hill's Notes*, 157; 2 *Id.* 1084. 3. The

circuit judge erred in charging that the return, if true, formed a good defence, because if the destruction of the goods would excuse the sheriff for not making the money it was not a defence, for the return admits a portion of the goods were saved; and indeed the destruction of the goods as alleged in the return was no defence, for when an officer seizes goods upon an execution he is bound to keep them safely, and if lost or rescued he is liable. ( *Watson's Sheriff,* 188 ; *Sly* v. *Finch, Cro. Jac.* 514 ; 6 *Mod.* 290, 292.) The rule as to liability is the same between plaintiff and sheriff as that governing in the case of a common carrier. (*Fairchild* v. *Case,* 24 *Wend.* 383 ; *Watson's Shff.* 138; *Com. Dig. tit. Rescous, D.* 4, *D.* 7; *Id. tit. Retorn, D.* 6; *Rolle's Ab. tit. Escape, p.* 888.) 4. The charge was calculated to mislead the jury. The plaintiffs, by showing that goods were saved, were *prima facie* entitled to a verdict for the amount of their debt, and it was incumbent on the defendant to show how much were saved, if there were not sufficient to pay it.

*J. A. Collier,* for defendant. The return of the sheriff was part of the record, and the defendant had a right to insist that the same should be read in evidence. It was an official act showing in what manner the process had been executed, or the sheriff's excuse for not executing it, and was proper evidence to the extent it was allowed to be used, under the decision of the circuit judge. (*Griffith* v. *Ketchum,* 12 *John.* 379.) It was at least *prima facie* evidence of all the sheriff assumes to return. It shows how far he proceeded in the execution of his official duty ; at what time and by what authority his further proceedings were stayed, and his excuse for not making the money by the return day ; and the accidental loss of the goods levied on before the expiration of the order staying proceedings, and before the return day of the writ, all of which were in the regular course of his official duty, and all necessary to be stated in answer to the command of the writ, and what his duty required in its execution. (*Gifford* v. *Woodgate,* 11 *East,* 296, 299 ; *Clark* v. *Lyman,* 10 *Pick.* 47, 169 ; *Spoor* v. *Hol·*

*land,* ·8 .*Wend.* 445 ; .*Cowen and .Hill's Notes,* .157, .1083,.4,.5, ·1092, 3 ; .*Watson's· Sheriff,* ·73, 74,· 370, 371,.373 ;· 6.*Hill,·.*553.)

· THE ·CHANCELLOR·delivered·a·written opinion in.favor·of affirming·the judgment in which he held, that ·although.the ·verdict appeared .to be.against the weight of.evidence, that ·error could·not be corrected by this·court, and· that the·charge ·of·the circuit.judge was not·objectionable. In.relation·to·the admissibility of .the return as.evidence ·for.the·defendant, and ·whether, if true, it·excused the ·sheriff,from ·liability for·the .goods destroyed by fire,.the·opinion.was; as follows :

There was·no·evidence: to show that the·loss was·occasioned by any·negligence of the receiptor or of·the defendant in the .execution, or that the goods·were not just.as ·safe·in .the;store ·of·Rosenbury, where they ·were suffered .to remain upon ·the responsibility ·of the receiptor, for their production.at the sale, ·as they would `have·been in the hands·of· the; sheriff·himself. The fact that they were receipted and left in the hands of the defendant in the execution, therefore, does not, in my opinion, render the sheriff ·any more liable for the loss shown, than he would·have been if he·had put them into his own store·house, ·and they had there been destroyed under similar circumstan- ·ces. The courts·of this state have,.in a variety ·of cases, ·recognized .the propriety of the sheriff's delivering· the goods to a receiptor, or leaving them ·with the defendant in the execu- tion, ·upon taking security of.a responsible person· for their rede- **livery** to the sheriff.whenever it may be necessary to..sell them ·on the execution. And it would frequently be.productive of .great hardship to the defendant and of actual loss to the plain- .tiff· in the· execution, if·.the· sheriff was·not allowed 'to ·do.so. 'The .letting .the defendant .to bail on mesne.process, does not .prevent the sheriff.from returning upon the writ.that he is.so sick ·that he cannot..be removed without· danger to·his·life, if.the fact is so, although· the sheriff.would·have a remedy .against the sureties in the bail.bond, if the defendant, neglected to put in special·bail upon the return of the process in the usual.form. (*Boles* v. ·*Lasells,* .*Cro. Eliz.* 852.) And there is no reason

why the taking of a receipt should deprive him of a similar right here.

It may be proper, in the first place, to inquire whether the facts stated in the return, if true, were sufficient to excuse the sheriff from liability for the loss of the goods. For, if the facts stated in the return did not excuse him from liability for the loss, it is wholly immaterial whether the return was or was not evidence in his favor. And we are not to inquire here whether the sheriff should not have stated in his return, that the defendant in the execution had no other property within his bailiwick upon which he might have levied after the fire, and before the return day of the execution, to satisfy the plaintiffs' debt. The plaintiffs, at the trial, were not precluded by the admission of this return as evidence, from showing that there was other property which might have been levied on if the sheriff was authorized to make a new levy during the continuance of the judge's order. And if the neglect of the sheriff to return that the defendant in the execution had no other property, was presumptive evidence that he had other property, that objection to the return should have been distinctly presented and insisted on at the trial, to enable the defendant, if it was in his power to do so, to produce evidence that Rosenbury had no other property. I am inclined to think, also, that under the judge's order, as stated in the return, the sheriff could not have made a new levy upon other property of Rosenbury, previous to the return day of the execution. The execution was delivered to the sheriff on the 21st of May, and the return states that on the same day he levied on the goods of the judgment debtor in his store sufficient to satisfy it; that he took a receipt of Ellsworth for such goods, which is set cut in the return, reciting the levy and the estimated value of the goods, and promising to deliver the same to the sheriff on demand, or to pay the amount of the execution with costs. The return farther states, that upon the giving of such receipt, the goods were left in the possession of the defendant in the execution; that on the 31st of May, the sheriff was served with an order made by Judge Moseley, staying the proceedings upon

the execution, until the first Tuesday of August, and until the further order of the supreme court, and it concludes, by stating as an excuse for not collecting the whole debt, that on the 22d of June, the goods levied on, together with the building in which they were levied on and left, were casually consumed by fire, except a small portion of them which the sheriff had sold, and upon which he had made $17,37, parcel of the debt mentioned in the execution besides his fees. The order then prevented the sheriff from making a new levy upon other goods after the fire, until after the return day of the execution. This certainly was a legal excuse for not having made such levy, and it was properly inserted in the return in connexion with the statement of the previous levy, upon sufficient property to satisfy the execution and the destruction of the property, as a full and perfect answer to the writ, if the sheriff was not answerable for the loss of the goods destroyed by the fire.

It is perfectly well settled, that a rescous of a defendant arrested upon a *capias ad satisfaciendum* or a *capias utlegatum* is no excuse for the escape of the prisoner, although the gaol was destroyed, and the prisoner rescued by an armed band of traitors; and the reason given in the books is, that a very early statute made it the duty of the sheriff to execute the process of the court, notwithstanding such excuse; for if necessary, that he should raise the power of the county to prevent resistance. (*Stat.* 13 *Edw. ch.* 39; 2 *Inst.* 454.) For, as Mr. Justice Fortescue says, " the law supposes the *posse* to be a sufficient defence against a rescue, and that no force is able to resist the sheriff and his *posse.*" For the same reason the return of a rescous is not a return of a sufficient excuse on a *fieri facias* for a neglect to satisfy the execution out of the defendant's goods. (*Sly* v. *Finch, Cro. Jac.* 514; *Godb.* 276, *S. C.*; 1 *Vent.* 21; *Mildmay* v. *Smith,* 2 *Saund. Rep.* 344.) The same reasons which are given for holding the sheriff liable, although the goods are rescued from him by actual violence, must also leave him answerable for the goods where they are lost by him or stolen by thieves. But these reasons do not apply to the case of a loss by a casual fire which the whole

Browning *v.* Hanford.

power of the county might not be able to resist, even if the sheriff had the power to summon the *posse* to extinguish it. And in the case in the year book, (33 *Hen.* 6, 3,) where Mr. Justice Prisot held the officer liable for the escape of a prisoner, although an armed multitude of traitors broke the gaol and rescued him, on the ground that the legal presumption in such cases was, that the sheriff had not sufficiently guarded the prison, his honor said it would probably be otherwise, if the prison had been suddenly burned by an accidental fire, and the prisoner had escaped by that means. So in the case of *Crompton* v. *Ward,* (1 *Strange,* 430,) Justice Fortescue, who stated the legal presumption that no force was sufficient to resist the sheriff with his *posse,* admits that a fire, which he calls an act of God, would excuse the sheriff. I think, therefore, the return of the defendant in the present case was an answer to the command of the writ, and stated good and sufficient reasons why he could not make the debt of the plaintiffs out of the property which he had levied upon, previous to the fire, and why he could not afterwards levy on other property. And the return, if true, showed also a good reason why the sheriff should not be answerable for those goods beyond the amount for which he sold the remnant saved from the fire. Nor have I any doubt that the return of a sheriff upon an execution, of any matter which he has a right to return, and which can properly be considered a part of his official return, is *prima facie* evidence in his favor of the truth of such matter. And the sheriff is always authorized to insert in his official return, any thing which is a valid excuse for not executing the writ according to the command thereof, as well as that which shows that he has in fact executed it, where he has no excuse. (*Bro. Abr. Retorno de Briefs,* 46 ; *Gyfford* v. *Woodgate,* 11 *East's Rep.* 296.) The reason why the sheriff is not permitted to make evidence in his own favor, by stating in his return that he has paid the money to the plaintiff, is that the writ does not command the sheriff to pay it to him, but directs that he have the money at the return of the writ to render to the plaintiff. In such a case, therefore, if the sheriff pays the money to the plain-

tiff or his attorney instead of bringing it into court, it is proper for him to take a receipt upon the execution, or some other evidence of the fact of payment, to support his return.

The circuit judge was therefore right in refusing to instruct the jury, that the return did not form any defence to the action, if true, and in refusing to charge that there was no evidence of the destruction of the goods by fire, or that the return was not evidence. But I think if the counsel had requested it, he might very properly have told the jury, that in case they were satisfied from the evidence, that any of the goods levied on by the sheriff had been sold by Rosenbury, or removed from the store previous to the fire, or that all the goods rescued from the fire were not sold by the sheriff, the return was false, and threw the burthen upon the defendant of proving what part of the goods were in fact destroyed by the fire. And in my opinion, the jury would have been fully warranted in finding that the return was false. For it is wholly improbable that the store was kept open from the 21st of May until the 22d of June, without the sale of any of the goods levied on by the sheriff on the first mentioned day.

PUTNAM, Senator. How far the sheriff's return is evidence *per se* to facts exculpating him from liability, is not very clearly settled. It is evidence for him as to those *acts* and doings, which have respect to his official duties, arising under the mandatory part of the process. For instance, the indorsement of the time of receiving the writ, and the act of levying and the goods levied on, is a statement of official acts which the writ requires, and should be allowed as evidence in his favor, subject nevertheless to be impeached. The subsequent destruction of the property levied upon, whether occasioned by casualty, or the carelessness or wrongful act of the sheriff, is far from being an official act. It would, I apprehend, be an unsafe rule to establish, which would relieve him from liability, after having taken goods upon an execution upon his own return, that they were casually burned. I can see no reason why a return that they were casually lost by him or stolen from him would

not, by the same rule, exonerate him from liability. Establish such a proposition, and the sheriff's appreciation of his responsibility might tend greatly to lessen the safety of property after a levy upon it. If the sheriff takes property levied on into his own possession, or commits it to the care of his servant, or an agent, he should, in case of its loss or destruction, in order to excuse himself from liability be required to give clear and satisfactory evidence that it was not occasioned by his neglect or want of such care as a prudent man would take of his own property. If he leaves it with the debtor, I am inclined to the opinion that no excuse should exonerate him from liability, except its destruction by the act of God, or the enemies of the country. The debtor has the same reasons, inducing him to dispose of the property improperly, which led him to interpose a delay to the collection; and besides these, his increasing prejudices and excited passion arising from the litigation would frequently tend to enhance the risk of injury to the property. Under such circumstances, I would hold the sheriff to a most rigid rule. If the return on the execution in this case discharges the sheriff from liability, he would always have a remedy at hand, even against gross carelessness and fraud.

Again, if the property is left in the possession of the defendant on a receipt given, I hold with the late Justice Cowen, that the sheriff should be made liable at all hazards. This absolute liability, is founded upon the agreement of the receiptor, upon the principle that the liability of the sheriff should be as broad as that of the receiptor to him. The receiptor is not the agent of the sheriff in the proper sense of the term, nor is he his bailee, subject to such rules only as extend to and regulate such relations. He is the friend and surety of the debtor at whose request and on whose account the goods are left in his possession, subject to all risk of loss and destruction. Where such a receipt as was given in this case is taken, the sheriff surrenders all charge of the property and looks to his receipt for his indemnity. The idea that the receiptor is his bailee or agent, is far from his thoughts, and he reposes himself upon the contract to indemnify him which he holds. The receiptor agrees either

to deliver him the property or to pay the execution. It is a plain agreement, and to allow an excuse for not delivering the property, that it is destroyed, except by the act of God or the enemies of the country, would greatly impair the force of the agreement. What was the intention of the parties, unless it was that either the property should be returned, or in default thereof, the amount stipulated as its value paid? I can see no good reason why such an instrument should be made an exception to the rule relating to the construction of contracts. It holds the party to his agreement and no more. He has no right to complain of its severity; it was his own voluntary undertaking and not one for the benefit of the sheriff. That such *should be* the construction, we have the clearest illustration from the evidence in the case before us. On the receipt being given, the property was left in the debtor's possession, and he went on as before, selling the goods and disregarding entirely the levy, and thus the whole might have been sold and put beyond the reach of the execution before the time for the delivery. This shows what ought to be the extent of the receiptor's liability, and what manifestly was the understanding of the parties. The rule of law cannot be relaxed to accommodate a possible hardship arising in the case, any more than it can to relieve a tenant from the payment of rent after the buildings upon the demised premises are destroyed by fire, or from a covenant to keep them in repair, or to surrender them in good condition at the expiration of the term, although there be no express covenant to rebuild. And if this is so, who can doubt for a moment that the liability of the sheriff should be as full as that of the receiptor. If it is not, the collection of debts might become a mere farce, and the sheriff might set the creditor at defiance, and treat with contempt his efforts to collect his debt. He could levy on the property, carelessly leave it in the defendant's possession upon a receipt for its safe delivery, and then in case of a loss, leave it to his own good pleasure whether the creditor shall be permitted to avail himself of it. I cannot bring myself to believe that there is any rule of law so absurd as that the sheriff can hold a perfect indemnity in his hands

for the satisfaction of the debt, and yet that it shall afford the plaintiff no claim for its payment. If the sheriff has obtained an indemnity, that should be the foundation for his own liability over to the creditor. If in the course of his official duties, and as the legal agent of the plaintiff, whose process he has to execute, he obtained an insurance for the satisfaction of the claim, that insurance should enure to the benefit of the plaintiff by cause of action over against him. . This would take nothing from the sheriff, for his receipt is his indemnity. If the receiptor should prove insolvent and the property be lost, as between the plaintiff and the sheriff, the latter alone should bear the loss. He could have retained the property in his own possession, and then in case of its loss, the rule of liability would be determined by the existing circumstances of the case.

The return of the sheriff, that he was served with an order to stay proceedings, affords him no relief. If the fact was in any respect available, it should have been proved. His return, in that particular, had no respect to any *official* act. The charge that the return as to the loss of the goods was proper evidence for the sheriff, I think erroneous. For these reasons, I am in favor of reversing the judgment of the supreme court and granting a new trial.

SPENCER, Senator. The counsel for the plaintiffs requested the judge to instruct the jury that the return of the sheriff formed no defence to the action, even if it were true. The judge refused this, but on the contrary, did charge and instruct them that the return, if true, formed a good defence to the. action, and that the same was evidence for the sheriff, that the goods levied on had been destroyed. In this the judge was clearly wrong; and upon this point alone the verdict must have been rendered for the defendant. The jury seemed to have forgotten or to have regarded as of no importance the rest of the charge. The sheriff had made a special return long after the return day of the execution, and no doubt after the commencement of the suit, in which was admitted a right of action for a portion of the plaintiff's claim, and without the

return of *nulla bona,* &c. for the residue.   If the case stopped here, there could be no manner of doubt that the judgment should be reversed.   The residue of the judge's charge is somewhat inconsistent with the portion I have repeated, but it was eminently calculated to weaken the force of the evidence given to contradict the return, and to lead the minds of the jury to the belief that it was worthy of little regard by them, and to keep prominently before them the statements in the return, and induce them to give too much weight to it.   The whole charge taken together was well calculated to mislead the jury, and they must have been misled by it, and must have relied exclusively upon the portion of it which was clearly erroneous, or they could never have rendered such a verdict as they did. The exceptions were properly taken, both to the omission and the charge as delivered.   I think, therefore, that the ends of justice will be subserved, and the law rightly administered by a reversal of the judgment.

Senators BARLOW, WRIGHT and TALCOTT delivered written opinions in favor of a reversal of the judgment, in each of which the position was maintained, that the return of a sheriff is evidence only of such official acts as are required by the writ to be performed, and not of facts to excuse their non-performance; and that in relation to such acts, it is simply *prima facie* evidence, and may be disproved.   Senator WRIGHT also concurred in the views contained in the dissenting opinion of the late Justice Cowen, (5 *Hill,* 593,) that when a sheriff leaves property levied upon in the hands of the debtor in the execution, he becomes as to the creditor the insurer of the property against its loss.

Upon the question being put, " *Shall this judgment be reversed ?*" the members of the court voted as follows :

*For reversal :* Senators BARLOW, BURNHAM, DEYO, JOHNSON, LOTT, PUTNAM, SANFORD, J. B. SMITH, S. SMITH, SPENCER, TALCOTT, WHEELER, WRIGHT—13.

*For affirmance :* THE CHANCELLOR, and Senators BEERS, EMMONS, HAND—4.

Judgment reversed.