Séldén, J;
 

 There id no doubt that
 
 k
 
 sheriff, marshal, of other officer of like character, Who toked property by virtue of legal process, is under some obligatitih to see to the protection Of such property against injury Or loss; but to what precise degree of care he is bound under the various circumstances which may attend süch
 
 k
 
 taking, is not very well settled by authority. Judge Story, in his work tin Bailments, section 130, in respect to the liability tif such an officer, says:
 
 “
 
 He would doubtless be responsible for gross negligence and fraud; but Whether he wtiuld be responsible for ordinary negligence, does not appear to have been decided by any ádjudged cáse; although ás he is a bailee for a compensation, it
 
 may ie thought
 
 that he
 
 ought
 
 to be bound, by the common rule in su’ch cases, to ordinary diligence;” and he refers to the cases of
 
 Jenner
 
 v.
 
 Joliffe
 
 (6 Johns., 9), and
 
 Burke
 
 v.
 
 Trevitt
 
 (1 Mason, 96).
 

 It strikes me that this id stating the doctrine somewhat too faintly.' A sheriff or marshal is not ah agent voluntarily selected, but a public officef, whom the party is Compelled to. employ; one who is clothed with a public trust; chosen by the public for his supptised fitness for thé discharge of important ánd responsible duties; He stands, moreover, between two opposing parties, being mádé by laW the Custodian of the property about which théy are in some measure contending, and which may therefore justly bé considered as "exposed to some perils Which Would not attend a mére ordinary bailment. Uhder these circumstances, the doubt in my judgment is not whether the officer is bound to take ordinary "care, but whether he ought hot to be held to a somewhat higher degree of diligence.
 

 But it is unnecessary to determine here the precise degree óf negligence which Would render a sheriff liable in an ordi
 
 *106
 
 nary case where he removes the property from the possession of the defendant, and takes it entirely under his own charge; because, whatever rule may be adopted on this subject, if it is to be regarded as applicable to the present case, the question of negligence should, I am inclined to think, have been submitted to the jury. There are, no doubt, cases depending entirely upon questions of negligence, where the proof is so clear that the court is justified in assuming, as a matter of law, that the negligence is established. But questions of that nature are peculiarly appropriate for the consideration of a jury, and courts are very justly cautious about encroaching upon their province in this respect. That there was negligence somewhere in the present case, provided we assume that if the vessel had been removed during the storm to the south side of the pier, the disaster would probably have been avoided, is pretty certain. The man placed in charge by the sheriff was warned of the danger; but as his instructions, as construed by him, were limited to seeing that the vessel was not removed, he declined to interfere. There is a discrepancy between his testimony and that of the captain, upon the question whether he refused to permit the location of the vessel to be changed. The whole difficulty may have grown out of the want of specific instructions to the man to whom the matter was given in charge. If so, this would be a species of negligence for which the sheriff must be held responsible.
 

 He is also, under the circumstances, responsible for any negligence or want of ordinary skill on the part either of the man employed to watch, or of the master of the schooner; for by leaving the coal in charge of the latter, without other control than that of a man to watch and see that the vessel was not removed, he necessarily made the master his agent, to see to the security of the coal in the place where it then was, and became, therefore, responsible for any negligence or want of skill on the part of the latter in talcing care of the property. It would seem to follow that if the jury should believe that the yes • sel would not have sunk if she had been removed to the south side of the pier, and that due and proper care required, after
 
 *107
 
 the storm arose, that she should have "been so removed, the sheriff must be held responsible for the negligence which prevented the removal, whether it arose from a want of proper instructions, a misunderstanding of those instructions, or from any other cause.
 

 But the plaintiff’s counsel insists that the defendant is liable at all events, irrespective of the question of negligence. His position is, that it was the imperative duty of the sheriff to remove the coal immediately from the vessel, and take it exclusively inter his own hands; that he had no right to leave it for any time under the control of the defendant in the suit; and that having done so he became absolutely responsible for its safety. The principal authority relied upon to support this position is the case of
 
 Browning
 
 v.
 
 Hanford
 
 (5 Hill, 588;
 
 S. C. in Error,
 
 5 Denio, 586). That was a case of goods seized upon execution and left in the possession of the defendant; a receipt being taken from a third person, by which the latter agreed to deliver the goods upon demand, or pay their value. "When the case was firs,t before the Supreme Court (5 Hill, 588), it turned mainly upon the question as to the degree of responsibility assumed by the sheriff, in leaving the property in the possession of the defendant, after taking a receipt; and it was held by three of the justices—the other dissenting—that his responsibility was that of an ordinary bailee for hire. A new trial was granted upon that occasion, and the case afterwards came again before the Supreme Court (7 Hill, 120), where it was, decided upon a single question, relating to the competency of the sheriff’s return upon the execution as evidence in his own favor; a new trial being denied. The case was then carried to the Court of Errors (5 Denio, 586), where, in addition to the question as to the return, the court considered the question, passed upon by the Supreme Court when the case was before it upon the first occasion, as to the degree of responsibility resting, under the circumstances, upon the sheriff. Different opinions were expressed; but as it is difficult, if not impossible, to ascertain upon which of the two questions involved
 
 *108
 
 in the case the hew trial was granted, nothing is settled by the decision ds to the point under consideration here.
 

 But, however that question may be -ultimately settled, its decision does not,' I think, control the present case. Assuming that in ordinary cases a sheriff, if he leave goods taken upon execution in the hands of the defendant, makes himself absolutely liable, and that his responsibility would generally be the samé whether the goods be taken by virtue of mesne or final process, as to which I express no Opinion, Í nevertheless think, that finder the peculiar circumstances of the present Case, the sheriff did not make himself liable at all events, by omitting forthwith to remove the coal from the vessel. The sureties of the plaintiff hád nbt justified, and until that was done he could not know1 that the plaintiff would entitle himself to the possession. The removal of the coal would have been attended with a heavy bill of expense; as he could not safely deliver it to the plaintiff until the sureties had justified, he would have had to procure a place to store it; and this would have involved the necessity of another removal, whether the coal had' ultimately to be delivered to the plaintiff or returned to the defendant. It is true that as his process was only against the coal, and gave him no authority to seize the vessel, Which must n'édessátily remain under the control Of the master, the sheriff could not with any propriety have left the coal in the vessel without the consent, ‘either express or implied, of such master. But I think the circumstances proved warrant the inference that the latter did tacitly consent that the coal should remain on board/and that his right to control the vessel should be subordinate to the rights acquired by the sheriff. The latter was, therefore, I think, justified in omitting to incur the great expénse of removing the coal, until it should be definitely 'settled whether it was to be delivered to the plaintiff or not. We áre brought therefore to the conclusion that it was incumbent upon the plaintiff to show some degree of negligence on the part of the sheriff, beyond the mere fact of omitting to remove the coal, and that the loss occurred in consequence of such
 
 *109
 
 negligence. It follows, if I am right in the view previously taken, as to the evidence upon the question, of negligence, that the court erred in refusing to permit the .defendant’s counsel to address the jury and in giving positive instructions to the jury to find for the plaintiff.
 

 But were it otherwise, the judgment must still be- reversed for an error in the charge of the court in respect to the effect of the bill of lading as .evidence. Whether this document may not have been admissible for some purpose, is a question which it is unnecessary in this pose to decj,de. In the case of
 
 Haddow
 
 v.
 
 Parry
 
 (3 Taun., 303), which -yas an action upon a policy of insurance, the bill of lading which was offered in .evidence, to show that the plaintiff had an insurable interest in the property, was rejected at'
 
 nisi prim,
 
 by Sir James Mansfield, .Oh. J., before whom -the cause was tried. But upon motion for a new .trial, the -phief .Justice thought the bill, might, under .some circumstances, be evidence upon the question of title in the consignee, in a suit between him and a third party. The person who signed the bill of lading in that case was dead, and reliance was placed upon that fact. Mir. Philips, however, seems to think such evidence admissible to prove title in the ..consignee; .as I should infer from his language, without regard to the death .of the person who signed the bill. (2 Phil. Ev., 37, 39,)
 

 Such evidence can only be admissible, if at .all, in connection yith proof of possession, by the party signing the -bill of lading.
 

 It .being unnecessary, however, to pass upon this .question in the present case, I shall express -no .opinion .u,pan it. Even if the evidence was improperly admitted upon the question of title, I should not think fhe error sufficient to reverse the judgment; for .the reason, that it was -wholly unnecessary for the plaintiff fo give.any evidence pf title, beyond the fact that the defendant had taken the property in-a suit in which he was plaintiff; „it not appearing .that any claim of title had been made on the part of any other person. The sheriff was responsible,
 
 prima facie
 
 at least, to the plaintiff, .and he shows no responsibility to any other party.
 

 
 *110
 
 But whether the bill of lading was or was not properly admitted in evidence, upon the, question of title, it clearly afforded no evidence whatever in regard to the quantity of the coal. If evidence on the question of title, it is because it goes to qualify what would otherwise be
 
 prima facie
 
 evidence of absolute ownership by the master of the vesssel, viz.: the possession. But the bare possession of the master affords no evidence as to quantity; and hence the bill of lading in that respect is nothing more than his mere naked declaration, unconnected with anything which can give it force as against a third party. It is undoubtedly good as an admission to charge the master himself; but is of no more force as against third persons than any other declaration he might make bearing upon their rights.
 

 The. court charged the jury “ that the bill of lading was
 
 some
 
 evidence of the amount of coal on board the vessel; that it appeared that the vessel was heavily laden, and her tonnage at custom house weight one hundred and thirty-four tons; and the jury were to determine
 
 upon the lili of lading,
 
 in connection with the evidence as to her being heavily laden, and her tonnage, how much coal was on board.”
 

 This part of the charge, which was excepted to, was very material. There was no other evidence of quantity in the case, except that here alluded to. Without the bill of lading, the jury would have been left on that subject entirely to the uncertain inference to be drawn from the capacity of the vessel.
 

 The verdict was based undoubtedly upon the statement in the bill, and as that was clearly incompetent for that purpose, the judgment cannot be sustained.
 

 Were it not for the necessity of reversing the judgment upon the point last considered, we should have felt bound to give to the facts a more critical examination; and might perhaps have come to the same conclusion with the Superior Court at general term, that the proof of negligence was so clear as to justify the court in taking the case altogether from the jury. Our conclusion, however, on that subject is, under the circumstances, of no controlling importance.
 

 
 *111
 
 The judgment must be reversed and there must be a new trial, with costs to abide the event.
 

 All the judges concurred except Comstock, Ch. J., who thought that the Superior Court was right in holding that the proof of negligence was too clear to leave any question for the jury. He was for reversal on the point last considered in the opinion of Selden, J.
 

 Judgment reversed, and new trial ordered.