MOORE *v.* WESTERVELT, Sheriff.

Coal on board a vessel was seized by the sheriff in replevin against the master. It was left on the vessel, with the master's consent, in charge of the sheriff's keeper, was sunk and damaged. In an action by the plaintiff in the replevin, who established his title, *held*, that the degree of diligence required of the sheriff was stated favorably enough to the plaintiff by a charge that it was his duty to take such steps to insure the safety of the coal as a careful, prudent man of good sense, well acquainted with the condition of the vessel and her location with regard to exposure to storms, might reasonably be expected to take if the coal belonged to himself.

*It seems* that the rule as above stated is sufficiently stringent for a case where the sheriff removes the property from the possession of the defendant and takes it entirely under his own charge, and that under the circumstances of this case a lower degree of care, viz., ordinary diligence, is all that is required of the sheriff.

APPEAL from the Superior Court of New York city. Action to recover damages for the alleged neglect of the defendant, as sheriff of that city, to keep in a secure place and deliver to the plaintiff a cargo of anthracite coal, which was taken possession of on board the schooner Calcutta, at a wharf on East River, by the defendant, by virtue of papers delivered to him in an action brought to recover the possession of such coal, by the plaintiff in this action, against one Lewis Hoffman, who was the master of the schooner. The schooner was fastened to the wharf. The sheriff did not remove the coal from the schooner, but left a person on board in charge of the coal, with the assent of the master. Within three days after the sheriff thus took possession of the coal, the schooner and coal were sunk in East River, during a gale of wind, which sinking damaged the coal that was not lost; and the plaintiff was put to considerable expense in raising that portion of the coal not lost. Hoffman did not take any steps to have the coal redelivered to him, and the plaintiff became entitled to the same, at the expiration of three days from the time it was seized by the sheriff, according to sections 209, &c., of the Code. The plaintiff recovered a judgment in his action against Hoffman, entitling him to the possession of the coal; and he subsequently brought this action. Evidence was given by both parties as to whether the schooner was properly fastened or duly taken care of, and as to whether the schooner or coal was sunk by reason of any negligence on the part of the defendant or the persons having charge of the same, after the defendant seized the coal and claimed to have possession of it.

The action was tried several times. (See 1 Bosw., 357; 2 Duer, 59.) On the last trial, Charles H. Hallenbeck, a witness for the defendant, testified that he had been in freighting estab-

lishments seven years, where they had vessels running from Hudson to New York; that he had been a clerk on board of a steamboat some three years; that he had charge of mooring the vessel when the captain was off, though he did not leave that altogether to his charge, but to his and the pilot's; and that he thought he (the witness) understood it. He described the situation of the schooner, and testified that it was fastened at the bow and stern with hawsers, and that he had charge of the coal, by direction of the defendant. He also stated that the hawsers were a large rope and the kind usually used for fastening vessels. The defendant's counsel put this question to this witness: "Please state what was the condition of the fastenings of this vessel as to safety." It was objected to, on the ground that it was not a question of science, and that the jury were just as competent to judge of it as the witness. The objection was overruled, and the plaintiff's counsel excepted. The witness answered, "I should judge that she was safely moored." By the court: "You mean to say, that the fastenings were proper fastenings for a vessel in that condition." Answer: "Yes, sir; I have seen vessels, time and time, moored in the same way." By the court: "In ordinary times?" Answer: "Yes, sir." Question: "With reference to a storm, how was it?" Answer: "I could not say; it would depend upon how severe the storm would be; sometimes our ships have broken them, and at other times, with a storm not quite so heavy, they would not part them."

Evidence was given that the schooner was leaky: as to the severity of the gale: as to the manner the schooner was taken care of,; and as to the circumstances under which she was sunk. It appeared, among other things, that Hoffman, the master, stated to Hallenbeck, the person left in charge of the coal by the sheriff, that the vessel was in danger of sinking, by a storm then coming up, and that he desired to remove her to the other side of the pier, where he thought she would be more safe, but Hallenbeck refused to permit her to be moved.

The judge charged the jury that the great question in the case was whether the sheriff, after having taken the coal into

his possession, was guilty of such negligence, in regard to its care and preservation, as occasioned its injury and consequent loss to the plaintiff; that it was the duty of the sheriff to take such steps to insure the safety of the coal as a careful, prudent man of good sense and judgment, well acquainted with the condition of the vessel and her location with regard to exposure to storms, and having all the power of the sheriff in the matter, might reasonably have been expected to take, had the coal belonged to himself; that if the jury came to the conclusion that the sheriff did not take that degree of care for the preservation of the coal he had thus indicated, and that the injury was occasioned by the negligence of the defendant or his officers, the plaintiff would be entitled to a verdict. The plaintiff's counsel interposed: "I ask the court to charge that the sheriff is responsible for the negligence of the master and crew after he took possession." The judge then said: "The sheriff was bound to do this: If such an owner as I have indicated would have taken the coal from the vessel as it lay at the wharf, in the first instance, the sheriff was bound to do it. He was bound to know the condition of the vessel, whether it leaked, whether it was seaworthy for the place in which it lay, how deeply laden, everything in regard to it; and he was bound to put on board the vessel, if necessary, such men as would pump her out and keep her in a condition to insure the safety of the coal." The defendant's counsel interposed: "I ask the court to charge the jury that if a prudent man, in a case of his own vessel, would not have removed her in the storm, the sheriff would not be bound to." By the court: "Certainly he would not." To which the counsel for the plaintiff excepted.

The following requests of the plaintiff's counsel to charge the jury were presented to the court before the charge was made, viz.: "1st. That the sheriff was bound to take more than ordinary care of this property, and if for the want of more than ordinary care the property was lost, he is responsible; 2d. That if the sinking happened from the want of due caution, either by the sheriff, deputy sheriff, captain, master

or hands of the vessel, then the sheriff is responsible." The plaintiff's counsel separately excepted to the refusals of the court to charge the jury as requested.

The jury rendered a verdict in favor of the defendant, and judgment was entered on the verdict in favor of the defendant, for costs. The Superior Court, at general term, affirmed the judgment, and the plaintiff appealed to this court. The decision of this court, when the cause was here the first time, is reported in 21 New York Reports, page 103.

*A. J. Vanderpoel,* for the appellant.

*Horton H. Burlock,* for the respondent.

BALCOM, J. The witness, Hallenbeck, had had some experience in mooring vessels, and said he thought he understood it; he stated how the schooner, having the coal in question on board, was moored; and I am of the opinion he was competent to answer the question: "What was the condition of the fastenings of this schooner, as to safety." The business of mooring vessels required skill to do it properly; but Hallenbeck possessed enough to render his opinion, as to whether the schooner was safely moored, competent evidence, though it certainly was not entitled to much weight, and probably did not have much influence with the jury.

When the cause was in this court the first time, Judge SELDEN intimated an opinion that the sheriff was responsible for more than ordinary diligence in taking care of the coal; but the court did not so decide. According to section 209 of the Code, it was the duty of the sheriff to take the coal and retain it in his custody; and section 215 required him to keep it in a secure place and deliver it to the party entitled thereto, who was the plaintiff, after the expiration of three days, as Hoffman did not take any steps for its redelivery to him, pursuant to section 211. But the defendant, as sheriff, did not, under the circumstances, become an insurer of the coal. (21 N. Y., 103.) In *Jenner v. Jolliffe* (6 Johns., 9), THOMPSON, J., in delivering the opinion of the court, said: "If the loss

of the timber happened while it was held under the attachment, and without the negligence of the officer, the defendant ought not to be responsible for it." In *Browning* v. *Hanford* (5 Hill, 588), COWEN, J., was of the opinion Justice STORY was right in putting the general liability of officers having the charge of property on the same footing as that of bailees for hire. (Story on Bailments, 3d ed., § 130.) Edwards says: " A sheriff, levying upon goods, must use due diligence to keep them safely, to satisfy the execution. But he is not an insurer, and is not, like a common carrier, answerable for a loss of the goods by fire. His capacity as an officer is not considered as fixing a more rigorous measure of liability upon him than if he were a private person." It seems that the views of this learned author, in regard to the liability of sheriffs having charge of property, coincide with those of Justice STORY. (Edwards on Bailments, p. 59.)

When a sheriff takes goods in execution, or by attachment, or in an action where the plaintiff seeks to recover possession of them, he becomes a bailee for the benefit of all parties interested, certainly for the benefit of the party who sets him in motion ; and " where the bailment is beneficial to both parties, as in case of pledging or letting to hire, the bailee must answer for ordinary neglect." (1 Cow. Tr., 2d ed., p. 56.) A bailee for hire, or where the bailment is beneficial to both parties, must exercise ordinary diligence in taking care of the property he has in trust, which is the care that every person of common prudence, and capable of governing a family, takes of his own concerns. The converse of this is, the omission of that care which such a person takes of his own concerns, and is termed ordinary neglect. (Edwards on Bailments, 44.) I am unable to see why a sheriff should be required to exercise any greater diligence in taking care of property in his custody, than a bailee for hire ; and I am of the opinion, the degree of diligence each is bound to exercise is the same.

If I am right in this conclusion, the charge was as favorable to the plaintiff as it should have been. The charge was, that it was the duty of the sheriff to take such steps to insure the

safety of the coal as a careful, prudent man of good sense and judgment, well acquainted with the condition of the schooner and her location with regard to exposure to storms, and having the power of the sheriff in the matter, might reasonably have been expected to take had the coal belonged to himself. The subsequent remarks of the judge, that if a prudent man, in a case of his own vessel, would not have removed her in the storm, the sheriff was not bound to, did not make the charge exceptionable. If the sheriff did as the judge charged it was his duty to do, he certainly exercised ordinary care in taking care of the coal; and his omission to remove the schooner, if a prudent man would not have done so in the storm, provided she had been his own, was not ordinary neglect. The jury had previously been instructed that the sheriff was bound to know the condition of the schooner, whether it leaked, whether it was seaworthy for the place in which it lay, how deeply laden, everything in regard to it; and that he was bound to put on board the schooner, if necessary, such men as would pump her out, and keep her in a condition to insure the safety of the coal. This is all a careful, prudent man could have known, or would have done, if he had owned the schooner. And, as I understand the charge, it made the sheriff responsible for the alleged negligence of the master and crew of the schooner after he took possession, so far at least as they had anything to do with the schooner or coal; and in this view of the charge, the refusal of the judge to repeat or state to the jury the second request of the plaintiff's counsel was not error, for he had already charged the same proposition, in legal effect.

The first request of the plaintiff's counsel to charge the jury was rightfully refused, because it was a proposition that the sheriff was bound to take more than ordinary care of the coal; and that if for the want of more than ordinary care the same was lost, he was responsible.

We have nothing to do with the question, whether the verdict of the jury was against evidence. The decision of the court below that it was not, is conclusive upon that point.

These views lead to the conclusion that the judgment of the Superior Court should be affirmed.

DAVIES, J.   The knowledge which the witness Hallenbeck had, fully authorized him to express an opinion as to the condition of the fastenings of the vessel as to safety. (*Price* v. *Powell*, 3 Comst., 322 ; *Bearss* v. *Copley*, 6 Seld., 93 ; *Pullman* v. *Corning*, 5 Seld., 93.)  In *Bearss* v. *Copley*, a witness had testified that a certain injury to hides could not have been caused by the plaintiff's negligence, but that it was an injury in the hides before they came to the tannery.   It appeared that the witness had been engaged in the tanning business a little over four years, and had done all kinds of work in the process of tanning, but that he had abandoned the business and was then a student-at-law.   GARDINER, Ch. J., said, in the absence of all proof to the contrary, experience for this length of time was *prima facie* evidence of the competency of the witness to speak upon the subject.   There was nothing in the change of the employment, from tanning hides to the study of the law, which would necessarily deprive him of the skill acquired in his original trade.   The evidence was, therefore, properly admitted.

The exceptions to the charge made, and to the refusals to charge, present, in fact, but one question, that is, the extent or degree of care which the sheriff was called upon to exercise for the safety of the coal, while in his custody, under the process mentioned.   The court holding that he was bound only to exercise such care as a careful, prudent man, of good sense and judgment, would take of his own property ; while the plaintiff insisted that the sheriff was bound to do more than this ; in his language, "to take more than ordinary care."   On the trial of this case, which was reviewed by this court (21 N. Y., 103), the rule laid down by Judge STORY, in his work on bailments (§ 130), in respect to the liability of an officer, circumstanced like the defendant, was questioned. That rule was: "He would doubtless be responsible for gross negligence and fraud ; but whether he would be responsible

for ordinary negligence does not appear to have been decided by any adjudged case, although, as he is a bailee for compensation, it may be thought that he ought to be bound by the common rule in such cases to ordinary diligence." Judge SELDEN thought this was stating the rule too faintly, when the sheriff removes the property from the possession of the defendant and takes it entirely under his own charge. But this court thought the sheriff was excusable, under the circumstances, in not removing the coal, and expressed the opinion, that in this case the sheriff was responsible for any negligence or want of ordinary skill on the part of either the man employed to watch, or of the master of the schooner; for, by leaving the coal in charge of the latter, without other control than that of a man to watch and see that the vessel was not removed, he necessarily made the master his agent to see to the security of the coal, and became, therefore, responsible for any negligence or want of skill of the latter in taking care of the property. This court held, therefore, that in this case the sheriff was responsible for the want of ordinary care on his part, or on the part of the agent employed by him. Common, or ordinary diligence, is that degree of diligence which men in general exert in respect to their own concerns. It may be said to be the common prudence which men of business and heads of families usually exhibit in affairs which are interesting to them. (Story on Bail., § 11.) Or, as Sir WILLIAM JONES has expressed it, it is the care which every person of common prudence and capable of governing a family takes of his own concerns. (Jones on Bail., 6; *Tompkins* v. *Saltmarsh*, 14 Serg. & Rawle, 275.)

Upon the circumstances, as they are developed in this case, this court was of the opinion that the defendant was only liable for any negligence or want of skill in the care and management of this particular property. But the judge below, on the trial of this case, assuming the remark of Judge SELDEN, that the doctrine enunciated by Judge STORY was somewhat too faintly stated, as applicable to the case of this defendant, proceeded to lay down a more stringent rule in

governing this case, and which would have been the correct rule in an ordinary case, when the sheriff removes the property from the possession of the defendant, and takes it entirely under his own charge. In such a case he would be held to high or great diligence, which is of course extraordinary diligence, or that which very prudent persons take of their own concerns. (Story on Bail., § 16.)

The judge at the trial has held this defendant to the doctrine of a borrower's liability, who is bound to extraordinary diligence, and responsible even for the slightest neglect; who is bound to exercise all the care and diligence that the most careful persons are accustomed to apply to their own affairs; and, in his case, a want of the most exact and scrupulous caution is regarded by the law as a culpable neglect. (*Coggs* v. *Bernard*, 2 Ld. Raym., 909 ; *Vaughan* v. *Menlove*, 3 Bing. N. C., 468 ; *Scranton* v. *Baxter*, 4 Sandf. S. C., 5.) In *Coggs* v. *Bernard* (*supra*), Lord HOLT said, that in the third sort of bailment, *scilicet locatio*, or lending for hire, the bailee is also bound to take the utmost care, and to return the goods, when the time of the hiring is expired. After a quotation from Bracton, he adds : " From whence it appears that if goods are let out for a reward, the hirer is bound to the utmost diligence—such as the most diligent father of a family uses, and if he uses that he shall be discharged." In *Scranton* v. *Baxter* (*supra*), Chief Justice DUER said the defendant there was liable as a borrower, and that the rules of law fixing the extent of his liability are exceedingly plain and undisputed. He was bound to extraordinary diligence, and was responsible even for the slightest neglect, *de levissima culpa ;* he was bound to exercise all the care and diligence that the most careful persons are accustomed to apply to their own affairs ; and in his case, it is the omission of the most exact and scrupulous caution that is regarded by the law as a culpable neglect.

It is obvious, therefore, that the most stringent rule has been applied to this defendant, and much more rigid than I think Judge SELDEN intended to apply to a sheriff who took the property, seized on process, into his own care and posses-

sion. The plaintiff has, therefore, no cause of complaint with the rulings of the judge in this case, upon the trial. They were much more favorable to him than the facts in this case would warrant. The exceptions thereupon taken cannot be sustained, and the judgment must be affirmed, with costs.

EMOTT, J., expressed no opinion; all the other judges concurring,

Judgment affirmed.