WILLIAMSON MILL AND LUMBER COMPANY, Appellant, *v.* BERT E. VALENTINE, Respondent.

Fourth Department, June 29, 1923.

Sheriffs — action to recover for making false return to execution and negligently failing to sell property levied on and apply amount received on judgment — loss of transcript and execution filed in county clerk's office not fatal to plaintiff's proof — sheriff not excused from performing duty by casual instructions given by agent of attorney of judgment creditor — sheriff levied on automobile in possession of purchaser from judgment debtor and left it with purchaser — automobile disappeared before sale — sale was adjourned — purchaser secreted automobile on advice of counsel and with knowledge of sheriff and gave sheriff bonds to protect him — said acts were criminal and civil contempt under Judiciary Law, § 750, subd. 4, and § 753, subd. 1, and criminal under Penal Law, § 1290, subd. 2, and § 1873,— measure of sheriff's liability is due diligence and not good faith — verdict in favor of defendant against evidence.

In an action by a judgment creditor to recover from a sheriff for making a false return to an execution issued to him and for negligently failing to sell property levied on and apply the proceeds on the judgment which was recovered in another county, the loss of the transcript of judgment and of the execution which were filed in the county clerk's office is not fatal to plaintiff's proof.

*It seems*, that the sheriff cannot excuse his failure to comply with the written instructions given by the attorney for the judgment creditor and with the law

on the ground that he received casual instructions to the contrary from the agent of the attorney for the judgment creditor who brought the execution to the sheriff; in failing to make proper inquiry as to the authority of the agent the sheriff acted at his peril.

It appears in this case that the sheriff was instructed by the attorneys for the plaintiff to levy on an automobile which formerly belonged to the judgment debtor but which he had transferred to his father-in-law; that the sheriff found the automobile in the possession of the father-in-law and levied on it but left it in the father-in-law's possession; that notices of sale were posted but prior to the time for sale the automobile disappeared and the sale was adjourned from time to time and finally went down and the executions were returned *nulla bona;* that the sheriff knew what had become of the automobile and that the father-in-law had secreted it on the advice of his attorney; that subsequently the father-in-law gave bonds to the sheriff to indemnify him against any loss if the plaintiff in this action recovered against him by reason of the acts of the sheriff and the father-in-law, and that the bonds so given recited that the father-in-law refused to permit the sheriff to take possession of the automobile.

*Held,* that if it is true that the father-in-law refused to permit the sheriff to take possession of the automobile on the advice of counsel, such act on the part of both the counsel and the father-in-law amounted to an interference with and a resistence to the lawful mandate of the court constituting criminal contempt under subdivision 4 of section 750 of the Judiciary Law and civil contempt under subdivision 1 of section 753 of the Judiciary Law, and was larceny under subdivision 2 of section 1290 of the Penal Law, or at least a misdemeanor under section 1873 of the Penal Law.

The measure of the sheriff's liability is not his good faith in doing the things that he did do but the degree of diligence and care he exercised in levying upon and selling the property under the mandate of the court and in protecting it while it was in his possession.

If the verdict of the jury in favor of the defendant turned on the question as to whether the father-in-law owned the car then it is against the weight of the evidence and if it was rendered on the theory that the defendant acted " in good faith " then it was based on a wrong principle. Since the jury did not receive positive instructions upon the law as to defendant's liability and there has been an obvious miscarriage of justice as a result, the judgment will be reversed and a new trial granted.

APPEAL by the plaintiff, Williamson Mill and Lumber Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Wayne on the 23d day of February, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 1st day of March, 1921, denying plaintiff's motion for a new trial made upon the minutes.

*Harlan W. Rippey,* for the appellant.

*Charles P. Williams,* for the respondent.

DAVIS, J.:

The action is to recover from defendant for making a false return to an execution issued to him as sheriff of Wayne county, and for

negligently failing to sell and apply on judgments property on which he had levied. The Code of Civil Procedure governed the duties and relations of the parties at the time the acts occurred and when this action was brought.

It appears that the plaintiff had obtained three judgments aggregating, with interest computed to date of trial, $1,016.56 in the Municipal Court of the city of Rochester in the months of March and May, 1918, against William J. Edell and Evelyn M. Edell, two of which judgments were also against one Alvin Block, an attorney. Prior to the recovery of the judgments, Edell had a Premier automobile whose purchase had been negotiated by Block. It was in Edell's possession and he was using it. About the time the judgments were recovered, Edell delivered the possession of this automobile to one Raymer, his father-in-law. A bill of sale executed October 26, 1917, for " $1.00 and other valuable consideration," purported to transfer the automobile to Raymer. When this was delivered does not appear. There is evidence that Raymer had been owing Edell money and that Raymer had declared he had paid it and all accounts were canceled before the car was so transferred to him or actually delivered. In other words, the badges of fraud and of concealment of the property from creditors are predominant, and are not disputed by any evidence except the bill of sale. Raymer was dead at the time of trial and Edell refused to testify on the ground that it might tend to incriminate him.

While the record is somewhat incomplete, due to the fact that the county clerk of Wayne county permitted transcripts and executions filed in his office to become lost, it is evident that plaintiff obtained transcripts of the judgments from the Municipal Court and filed them in the Monroe county clerk's office. They then became judgments of the Monroe County Court. (Code Civ. Proc. §§ 3017, 3226. See, also, Rochester City Charter [Laws of 1907, chap. 755], §§ 524, 529.*) Proof of the filing and docketing of the transcripts would be legitimate evidence of the existence of such judgments and of the authority to issue the execution by the clerk of that court or of any other court in which transcripts of the judgments were filed. (*Belgard* v. *McLaughlin*, 44 Hun, 557; *Stephens* v. *Santee*, 49 N. Y. 35; *Dickinson* v. *Smith*, 25 Barb. 102.) The plaintiff then obtained transcripts from the clerk of Monroe county

---

* Since renumbered §§ 513, 521, and amended by Laws of 1918, chap. 495; Laws of 1921, chap. 525, and Laws of 1922, chap. 483, whereby the Municipal Court of the City of Rochester was superseded by the City Court, Civil Branch, of the City of Rochester, or by the City Court of Rochester, Civil Branch. See, also, Rochester City Charter, § 466, added by Laws of 1918, chap. 495, as amd. by Laws of 1921, chap. 525, and Laws of 1922, chap. 483.— [REP.

and filed them in the Wayne county clerk's office. The docket of judgments there shows that such transcripts were filed, and in no other way could they have legally been filed. The loss of the transcripts, no matter by whose carelessness, is not fatal to plaintiff's proof.

Executions on these judgments were issued to the sheriff on July 2, 1918. A letter from the plaintiff's attorney to the sheriff told him to levy on this automobile. The sheriff was familiar with the car and its location for he had just replevied it in another action. The letter and the executions were delivered to the sheriff by Block, who, as I have said, was one of the judgment debtors but was apparently assisting the plaintiff. The sheriff says he did not know the plaintiff's attorney, but assumed that Block was the attorney, and that Block gave him some oral instructions in addition to those in the letter. These claims are apparently an afterthought, for in reciting the facts in an affidavit long before the trial, he did not mention them. The sheriff may be bound by special instructions given by the attorney issuing the writ and may become his agent (*Walters* v. *Sykes*, 22 Wend. 566); and these excuse him from his general duty. (*Root* v. *Wagner*, 30 N. Y. 9; *Smith* v. *Erwin*, 77 id. 466.) I doubt if he may be excused in failing to follow the written instructions of the attorney and the mandate of the court, by any casual instructions given to him by a stranger or the messenger who brought the executions. In failing to make proper inquiry as to the authority of one giving instructions, I think he acted at his peril.

But it is not necessary to decide that question on the view I take of the case. After a great deal of apparently unnecessary delay, the sheriff levied on the car which he found in Raymer's barn in a dismantled condition and not readily movable. He left it in Raymer's possession as he had done in the replevin action, and posted his notices of sale for August twelfth. In the meantime Raymer served a notice making claim for the car. The sheriff notified plaintiff's attorney and on the day of sale an indemnity bond was given the sheriff, satisfactory to him as to its sureties, and he made no complaint as to its form. Subsequent written instructions from plaintiff's attorney to levy and sell had superseded any alleged instructions given by Block. When he came back to make the sale on August twelfth the car had disappeared. At the suggestion of the plaintiff's attorney the sale was adjourned.

The sheriff claims he made some inquiries about the car and could not discover it. There is evidence in the record, admitted without objection, that the sheriff knew exactly what had become of the car,— to wit, that Raymer had taken and secreted it on the

advice of his attorney, and subsequently gave the sheriff two bonds to indemnify him against any loss if the plaintiff recovered against him by reason of these circumstances. These bonds recited that Raymer " refused to permit said sheriff to take possession of " the car. This, if true, was rather strange advice for an attorney, an officer of the court, to give a client. If followed, it was an act on the part of both in effect amounting to an interference with and a resistance to the lawful mandate of the court, constituting both criminal and civil contempt. (Judiciary Law, § 750, subd. 4; Id. § 753, subd. 1.) It would also, in my judgment, be larceny (Penal Law, § 1290, subd. 2); and at least was a misdemeanor. (Penal Law, § 1873.) There was a legal method by which the claimant could protect his rights, as I will presently point out. Likewise, it was strange conduct on the part of a sheriff to suffer a man having custody of property already levied on, to refuse to permit him to take possession of it. He either was grossly ignorant of his duties and authority (*Steffin* v. *Steffin*, 4 Civ. Proc. Rep. 179; *Ansonia Brass & Copper Co.* v. *Babbitt*, 74 N. Y. 395; 35 Cyc. 1534, 1538) or he was acting in connivance or collusion with the claimant.

The plaintiff's attorney, not knowing what had become of the car, asked the sheriff to adjourn the sale from time to time and to make an effort to find it, and finally the sheriff notified the attorney that the sale had gone down. He claims now that he was advised by the attorney to let it go down; but the evidence of that fact is very unsatisfactory. What happened, no doubt, was when he got his indemnity bond from Raymer September twenty-eighth, he lost interest in plaintiff's rights and let the sale go down on September thirtieth. He was sufficiently vigilant as to his own rights so that he presented his bill for fees to plaintiff's attorney and was paid twenty-four dollars and eighty cents in full.

This action, as I have said, was brought to recover damages from the sheriff on the theory that he falsely returned the executions *nulla bona;* and that he had been guilty of neglect of official duty in failing to obtain possession of the car and sell it to apply on the debt. It is not clear from the record on just what theory the case was tried; or whether both questions went to the jury or not. The appellant's counsel claims that he was nonsuited on the second cause of action. I cannot find such decision in the record. We do not need to decide upon which particular theory the case was tried.

The trial court submitted the question to the jury, charging that if defendant lost the property after having made a levy upon it and then returned his execution *nulla bona*, he was liable; but that he was permitted to show he acted in good faith. This was repeated

several times in the charge that the sheriff's *good faith,* not what he did, was the test.

I do not understand that to be the measure of his liability. The law defines what he as the executive officer of the court must do. Executions must be delivered to him. (Code Civ. Proc. § 1362.) He must execute the mandate of the court if he may do so by reasonable diligence. If property is levied on by him and a claim by a third person is filed with him under certain circumstances, he may, in his discretion, impanel a jury to try the validity of the claim. (Code Civ. Proc. §§ 1418, 1419.) If by their inquisition the jurors find the property belongs to the claimant, they must also determine its value, and the officer may then relinquish the levy unless the judgment creditors give him an undertaking indemnifying him. If the undertaking is given, the officer must detain the property as belonging to the judgment debtor, file his undertaking and give notice to the claimant and the judgment creditors, and the sureties may then be required to justify. (Id. § 1419.) If the finding of the jury is against the claimant, he may still bring an action to recover the property or for damages (Id. § 1420); but in such an action the sheriff may require the indemnitors to be substituted as defendants and he is relieved of liability. (Id. § 1421 *et seq.*) This procedure was not followed, but the sheriff was protected by a general bond of indemnity. He was not justified in suspending all efforts to enforce the execution because some one made an informal claim to the property.

A sheriff to whom process is delivered is liable for failure to execute the same for any damages resulting from his negligence or default thereupon (*Lewis* v. *Douglass,* 53 Hun, 587; *Hoffman* v. *Conner,* 76 N. Y. 121; 35 Cyc. 1625), and the measure of damages in the absence of other proof is the amount of the execution. (*Bowman* v. *Cornell,* 39 Barb. 69; *Humphrey* v. *Hathorn,* 24 id. 278; *Ledyard* v. *Jones,* 7 N. Y. 550.) If he allows property upon which he has levied to be taken from his possession, or it is otherwise lost or injured while in his custody or in the custody of one he has placed in charge of the property, his duty is clear. He must make diligent effort to ascertain where the property is and retake it by force if necessary or by replevin (35 Cyc. 1669); or obtain its value in an action for conversion (*Steffin* v. *Steffin, supra; Wood* v. *Bodine,* 32 Hun, 354); and in any event he is liable for the loss of property if he has been negligent in the performance of his duty in failing to retake it. (*Hoffman* v. *Conner, supra; Browning* v. *Hanford,* 5 Den. 586; *Wood* v. *Bodine, supra; Moore* v. *Westervelt,* 21 N. Y. 103; *Ansonia Brass & Copper Co.* v. *Babbitt, supra;* 35 Cyc. 1669.)

The measure of his liability is not his " good faith," but the degree of diligence and care he has exercised. (*Moore* v. *Westervelt, supra;* 35 Cyc. 1670.) Substantially the same principles apply where the action is in the form of one for making a false return. (*Hoffman* v. *Conner, supra.*)

An executive officer of the court should not be permitted to so juggle with the mandate of the court, as the evidence in this case discloses, and allow property to be taken and secreted on which he has levied, with collusive knowledge that it was so taken and retained; and receive indemnity bonds to protect him against such unlawful taking that he has winked at. I know of no legal authority for such a bond. He should be held to a strict liability under the facts disclosed here, which showed sufficient misconduct so that he might properly have been removed from office.

If the verdict turned on the question as to whether Raymer owned the car (which is doubtful), then it is against the weight of evidence. If the verdict was rendered for defendant on the theory that he acted in " good faith," then it was decided on a wrong principle. The jury were entitled to positive instructions on the law as to defendant's liability. (*Moore* v. *Westervelt, supra,* 109.) These they did not receive, and an obvious miscarriage of justice has resulted.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to appellant to abide event.