GEORGE D. HUTTON v. WILLIAM CAMPBELL.

1. OFFICER'S RETURN. *Cannot be collaterally attacked.* As a general rule, the parties to a suit, and their privies, cannot falsify the record thereof except in a direct proceeding to vacate and annul it; and the return of an officer, either of *mesne* or final process, as to all the facts which the officer had authority to certify, becomes a part of the record, and cannot be attacked collaterally by the parties.

2. SAME. *Return of execution.* The return of an execution is the statement of the officer, certified to the court under the sanction of his official oath and responsibility, of what he has done touching the execution of the writ according to its commands and the requirements of the law.

3. SAME. *Evidence.* The officer cannot make his return upon an execution evidence of anything by way of excusing himself for not having performed the duty required, and such return, if evidence at all between the parties to the suit or their privies, would only be *prima facie* evidence.

4. SAME. *Execution. Parol proof admissible. When.* In a proceeding, therefore, by a surety to supersede and quash an execution upon the ground that a former execution had been levied on sufficient personal property of the principal debtor to satisfy the judgment, parol proof is admissible, on the part of the surety, to contradict the officer's return on the execution thus levied: "Held up by order and consent of all parties."

FROM BEDFORD.

Appeal from the Circuit Court of Bedford county. ROBT. CANTRELL, J.

WISENER & SON for Hutton.

———— for Campbell.

COOPER, J., delivered the opinion of the court.

On August 13, 1860, George D. Hutton recovered a judgment before a justice of the peace against R. S. Dwiggins and William Campbell for $500. On September 15, 1860, execution issued on the judgment, and was, on the same day, levied on two hundred barrels of corn and sixty head of pork hogs, as the property of R. S. Dwiggins, subject to another *fieri facias* specified. Afterwards, on February 20, 1881, the officer returned the execution endorsed: "Held up by order and consent of all parties." On February 26, 1861, another execution issued, and was levied on one crib of corn valued at $400, and one black stallion valued at $150, as the property of R. S. Dwiggins. The execution was returned the same day as follows: "Returned levied and bond given under the act of Assembly." Other executions are shown by the justice's docket to have issued, under which nothing appears to have been done. On February 19, 1876, a *pluries fieri facias* issued and was levied on certain goods and chattels as the property of William Campbell. It was returned as levied too late to advertise and sell, and, on March 18, 1876, a *venditioni exponas* issued, which was superseded by the defendant Campbell. He stated in his petition the foregoing facts, certain other facts tending to show payment of the judgment, that Dwiggins was dead, that he was the surety of Dwiggins, and asked for writs of *certiorari* and *supersedeas* upon the ground that the judgment had been paid, or, if not paid, that it was satisfied as to him by the levies on the personal prop-

erty of Dwiggins as above set forth. Upon the trial, the jury found a verdict in favor of the defendant, Campbell, and the plaintiff, Hutton, appealed in error from the judgment rendered thereon.

It is conceded that there is sufficient evidence to sustain the verdict, and the errors assigned for reversal are in a ruling of the trial judge upon the admission of evidence, and in the judge's charge to the jury.

The first error relied on was in the admission of the testimony of the defendant, Campbell, over the objection of the plaintiff, that he never consented that the officer should return the first execution: "Held up by order and consent of all parties;" and that he did not know that such a return was made. The objection taken to the testimony in the court below, and now insisted upon, was and is that the officer's return could not be impeached by parol testimony. The general rule, undoubtedly is, that parties to a suit, and their privies, cannot falsify the record thereof except in a direct proceeding to vacate and annul it. And the return of an officer, either on *mesne* or final process, as to all the facts which the officer had authority to certify, becomes a part of the record, and cannot be attacked collaterally by the parties: *Nichol* v. *Ridley*, 2 Yer., 63 ; *Love* v. *Smith*, 4 Yer., 117 ; *McBee* v. *State*, Meigs, 133 ; *Pratt* v. *Phillips*, 1 Sneed, 543. It is otherwise as to third persons, and therefore a return of the sale of property under an execution is not evidence against the purchaser (*Mitchell* v. *Lipe*, 8 Yer., 179), nor *e converso*, against the judgment debtor as between him and the purchaser: *Loyd* v.

*Anglin,* 7 Yer., 428.    And the effect of the return as between the parties must be restricted to those facts which it is the duty of the officer to state: Freem. on Ex., sec. 364.    The question is, consequently, narrowed down to the point whether the return in the case before us is within the rule.

The return of an execution is the statement by the officer, certified to the court under the sanction of his official oath and responsibility, of what he has done touching the execution of the writ according to its commands and the requirements of the law: *Harmon* v. *Childress,* 3 Yer., 329; *Bank* v. *Barnes,* 10 Hum., 245. The command of an execution is that the officer make the money therein specified out of the property of the defendants: Freem. on Ex., sec. 38.    The law usually prescribes the time for the return of the writ, and the time and place may be specified ·in the execution: *Id.*    The officer's return may properly contain the facts touching his acts under the mandate and the law.    Whether he can make evidence for himself that what he did was by direction of the judgment creditor is left in some uncertainty by the authorities: *Gyfford* v. *Woodgate.* 11 East, 297; *Barrey* v. *Weeks,* 4 Verm., 146.    But it has been held that he cannot make his return evidence of his having paid the amount to the plaintiff: *Cator* v. *Stokes,* Maule & S., 599; *First* v. *Miller,* 4 Bibb, 311.    And, generally, the officer cannot make his return evidence of anything by way of excusing him for not having performed the duty required : *Bruce* v. *Dyall,* 5 Monr., 125; *Holderman* v. *Brassfield,* Litt. Sel. Cas., 271; *Browning* v. *Har-*

*ford,* 5 Denio, 586; *Shannon* v. *McMullin,* 25 Gratt., 211. In the case last cited, a bill was filed by a surety to enjoin an execution upon the ground most relied on in the case before us, namely, that the surety was discharged by a release of property of the principal after a levy, and the court held that the return upon the execution thus levied, that it had been held up and the property not sold by direction of the person entitled to the proceeds of the judgment, was not evidence against such person, who was, of course, in privity with the judgment creditor: *Phillips* v. *Elwell,* 14 Ohio St., 244; Freem. on Ex., sec, 365. The return under consideration purports to give an excuse for not complying with the mandate of the writ. If its admission as evidence had been objected to, it should, perhaps, have been excluded. And, in view of the authorities, it could in no event be more than *prima facie* evidence. His Honor, the trial judge, did not err in admitting the testimony now objected to.

The counsel of the plaintiff next insists that whether the defendant was released or remained bound must be determined by the return itself, that the effect of the return was to discharge the levy with defendant's consent, and that his Honor erred in charging that the defendant would continue bound if he consented to the return, and also consented to the discharge of the property. But the objection necessarily fails if, as we have seen, the return is not evidence, or, at most, only *prima facie* evidence of the facts stated. And his Honor expressly said to the jury that they might look to the return, as well as the other evidence, in ascer-

taining whether the defendant did consent to the discharge of the property. A consent, moreover, to the return that the execution was held up. would not necessarily imply a consent to a discharge of the levy.

It is next insisted that the plaintiff was not bound by the proceedings under the second execution, the plaintiff having testified that he knew nothing about the issuance of that execution, nor of the action taken under it. But whether the plaintiff knew of the issuance and return of the execution was a question of fact for the jury. Unless there was some error in the charge upon the subject, which is not claimed, the finding of the jury is conclusive.

The defendant read in evidence the return on the second execution: " Bond given under the act of Assembly;" and the entry of the substance of the return on the justice's docket: " Bond given under the late law;" both without objection. And the defendant then argued that the bond was taken under the act of January 26, 1861, allowing a stay of execution on all judgments for twelve months, upon bond and security, which act has been held by this court to be unconstitutional: *Webster* v. *Rose,* 6 Heis., 93. The charge of the trial judge upon this aspect of the case is conceded to be correct. But it is objected that his Honor should have expressly left it to the jury to find whether the bond was taken under that act, or the act relating to forthcoming bonds. He was not, however, asked so to charge. No doubt, it was taken for granted by all parties in the court below that the bond was taken under the then recent act of Assembly. If there

were any contention to the contrary, the attention of the trial judge should have been drawn to the fact.

The charge of his Honor that a release by the plaintiff of property of the principal actually levied on would discharge the liability of the surety to the extent of the value of the property, is undoubtedly correct: *Watson* v. *Read,* 4 Baxt., 49; S. C., 1 Tenn. Ch., 196: *Holt* v. *Manier,* 1 Lea, 488.

The special requests asked for by the plaintiff were properly refused. The first request, in effect, required the court to instruct the jury that certain deductions of fact might be drawn from certain evidence; and the second asked him to charge that the verdict should be in favor of the plaintiff if the jury found that there was a conflict between the plaintiff and defendant as to a certain fact, a novel but very sure way of winning a verdict.

Affirm the judgment.