1. MARINE INSURANCE—SEAWORTHINESS.
   In an action upon a policy of marine insurance, *held*, that the sudden sinking of a canal boat while being towed down the North river was not conclusive evidence of unseaworthiness, and that there was room for finding that the loss was from a peril of the sea; the evidence being that there were shad poles in the river at the place of sinking, and that another vessel had been lost from collision with such obstructions.

2. SAME—ABANDONMENT.
   Where a policy provided that there could be no abandonment except in case of absolute total loss, it was not necessary, in case of constructive total loss, to prove abandonment.

3. EXPERT EVIDENCE.
   An expert may testify that a vessel was a "total loss." An objection that such evidence was a "conclusion" does not raise the question of its admissibility, since all opinions are conclusions

4. WITNESS—CORROBORATION.
   A witness may, to rebut an inference sought to be drawn, that his testimony at the trial is an afterthought and a fabrication, be allowed to testify to unsworn statements of similar import made previously out of court.

5. PRACTICE—MOTION TO DISMISS.
   Motion to dismiss because complaint omits some allegations claimed to be necessary is too late after evidence on omitted point has been received without objection.

(Syllabus by the Court.)

Appeal from city court of New York, general term.

Action by Bernard McLain against the British & Foreign Marine Insurance Company, Limited. There was a judgment of the general term of the city court of New York affirming a judgment of the trial term (35 N. Y. Supp. 827) on a verdict in favor of plaintiff, and defendant appeals. Affirmed.

The action was to recover $1,000 upon a policy of marine insurance, for the loss of the canal boat Agnes K., which sunk off Weehawken.

with a cargo of coal, while towing from Guttenberg, on September 16, 1893.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Stewart & Macklin, for appellant.

Hyland & Zabriskie, for respondent.

DALY, P. J. As the vessel suddenly sank from a cause which the captain was unable to explain with certainty, the contention is that she was unseaworthy when she commenced her voyage, and was not lost through any peril of the sea insured against. There was, however, sufficient evidence that she was in good condition when the voyage commenced; and the testimony that she suddenly sank in smooth water, after heaving as if something struck her,—as if she were lifted by a dead swell,—showed that she did not become leaky after starting, but that her sinking was the result of accident. The circumstances warranted the jury in believing that the theory of the master was correct,—that she came in contact with a hidden obstruction in the river. He testified that there are always, in the neighborhood in which this accident occurred, submerged shad poles, broken off by tows and by ferryboats going through them at night, and that he had experienced two accidents from such obstruction to boats under his charge. It would be unreasonable to expect, in every case of marine disaster, the most satisfactory proof of the cause. The case was therefore properly submitted to the jury upon the questions to which the testimony was relevant, and there only remain to be considered the appellant's exceptions.

A motion to dismiss was made at the close of plaintiff's evidence, on the ground that the complaint did not allege seaworthiness. The objection came too late, as proof of seaworthiness had been already received without objection. Dismissal was also asked because the plaintiff had made "no proper abandonment" to the defendant, and because there was no proof of abandonment. The motion failed to disclose the point now made,—that the policy required an abandonment in writing. That ground should have been urged at the trial, if relied upon. Abandonment was not made, by the contract, a condition of recovery. The policy provides that the insured shall not have a right to abandon the vessel except in case of absolute total loss. This, if enforced, would leave the insured remediless. Under the authorities, an absolute total loss entitles the assured to claim the whole amount of the policy from the underwriters, while a constructive total loss entitles him to make such claim on condition of giving notice of abandonment; the object of abandonment being to make a constructive total loss a loss absolute. 2 Arnould, c. 8. In this case the boat was raised, and found to be so injured as to be past repair. It was therefore a constructive total loss. "A constructive total loss takes place when the subject insured is not wholly destroyed, but its destruction is rendered highly probable, or the privation of it, though not quite irretrievable, is such that its recovery is either exceedingly doubtful, or too expensive to be worth the attempt." It

is conceded that the present is a case of constructive total loss, and, if there can be no abandonment, there can never be loss absolute, and the policy never becomes enforceable. A construction of any of the terms of a contract of insurance which defeats its whole object is not to be allowed.

The other exceptions relied upon by appellant relate to the admission of testimony. An expert examined by plaintiff was permitted to answer the question whether the vessel was a total loss. He was first asked whether she could be repaired, and he answered she could not. The defendant's objection was that the question called for a conclusion, but all opinions are conclusions, and the objection does not raise the question now argued,—that expert testimony of this character was inadmissible. An expert is permitted to state whether a vessel is "seaworthy." Baird v. Daly, 68 N. Y. 547. It was said that "the jury were nonexperts, and with every fact which would enable a skilled man to determine the question of seaworthiness, it by no means follows that they would make the proper inference, and arrive at a correct conclusion." The opinion was allowed, although it was upon the precise question which the jury were to determine, because it involved the result of an examination which could not be fully communicated to the jury. Van Wycklen v. City of Brooklyn, 118 N. Y. 429, 24 N. E. 179. So a witness was permitted to say whether a vessel was safely moored. Moore v. Westervelt, 27 N. Y. 234. In cases of fire insurance, experts are permitted to testify whether a certain addition to a building increases the risk; and, in cases of life insurance, physicians are allowed to testify that insurance on the life of a certain person was a bad risk. Lawson, Exp. Ev. c. 3.

Exception was taken to the testimony by the master of the vessel as to what he communicated to the surveyor at the time of making his protest concerning the cause of the disaster. In a protest the witness merely stated that the vessel sprang a leak and sank. In his testimony upon the trial he stated that she heaved as if something struck her. When cross-examined by defendant he was confronted with his protest. The plain inference sought to be drawn was that his statement on the stand was an afterthought. Under these circumstances, he was properly permitted, in explanation, to show that when making the protest he also made a statement not differing substantially from his testimony upon the trial. Baber v. Railroad Co., 9 Misc. Rep. 20, 29 N. Y. Supp. 40.

The judgment and order should be affirmed, with costs. All concur.