[Civ. No. 3396.   Third Appellate District.—December 28, 1927.]

VINNIE WOOD DAVIS, as Administratrix, etc., Respondent, v. C. C. TANNER et al., Appellants.

George W. Seith and Louis P. Pink for Appellants.

Culver & Nourse for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment and order denying a motion for a new trial following a verdict for eleven thousand dollars damages for the death of respondent's husband, who was killed by appellants' automobile while attempting to cross Spring Street in Los Angeles.

The appellants contend that (1) the judgment is not supported by the evidence, (2) that the trial court erred in admitting evidence of a witness of respondent given at the coroner's inquest, which was received for the purpose of rehabilitating her testimony at the trial, after an attempt had been made by the appellants to impeach her by introducing a former written statement made by her regarding the incident, which effort to impeach the witness was apparently offered on the theory that her testimony at the trial was a fabrication on her part of recent date, or that it was given through unwarranted influence exercised on the part of respondent's attorneys, and (3) that the court erred in giving certain instructions at the request of respondent.

The respondent is the surviving widow and the duly qualified administratrix of the estate of Harvey D. Davis, deceased. Appellant Tanner is a corporation operating a taxicab business in the city of Los Angeles, under the name of "Brown and White Cab Company," and the appellant Crawford was engaged as a chauffeur of the cab which was involved in the accident. The deceased was a man forty-two years of age, and possessed of good health and faculties. About 3 o'clock in the afternoon of February 4, 1924, he attempted to cross Spring Street in Los Angeles amid congested traffic, midway between Fourth and Fifth Streets as they cross Spring at right angles. A double line of street-car tracks extends along Spring Street at this point.

A compact line of automobiles was parked along the westerly curb throughout the block. A second line of machines was standing toward his right, opposite the safety zone, at the southerly end of the block awaiting the traffic signal to proceed across the intersection of Fifth Street. Toward his left, about seventy-five feet distant a street-car and the taxicab involved in this action were approaching abreast, at an ordinary rate of speed estimated at about eight or ten miles per hour. Under such circumstances the deceased stepped from the westerly curbing of Spring Street at a point about the middle of the block, and passing between two of the automobiles which were parked there, he looked toward his left whence danger from traffic might be expected on his side of the street, and then saw the street-car and appellants' taxicab at a distance of about seventy-five feet, approaching at a rate of speed which would warrant a reasonably prudent person in assuming he would have ample time to safely cross the street ahead of the vehicles. He then hastened forward and reached a point about the middle of the south-bound track, where he was struck by appellants' taxicab, which was speeding up to get ahead of the street-car so as to avoid the line of stationary machines toward the southerly end of the block, which were awaiting the traffic signal to continue their course southerly. The taxicab swerved in ahead of the street-car, causing the motorman to clang his bell violently as a warning. The taxicab struck the deceased and carried him a distance of sixty or seventy-five feet before the driver was able to stop the machine. The application of the brakes, in an effort to stop, left distinct skid marks on the pavement behind the taxicab some sixty feet in length. After the machine was brought to a stop the deceased lay injured and bleeding in the north-bound track just ahead of the front left wheel of the taxicab. He was immediately taken to the hospital and died within a few hours thereafter. The chauffeur testified that at the time of the accident he was traveling only about eighteen or twenty miles per hour; that he swerved in ahead of the street-car and suddenly saw the deceased only a few feet ahead of the machine; that he immediately applied the brakes, but was unable to avoid hitting the man. Expert testimony indicates without conflict that a similar auto-

mobile under like circumstances traveling twenty miles per hour could be stopped with the use of the foot-brake alone within a distance of forty feet, and that a car going at the rate of twenty-five miles per hour could be stopped under similar conditions within sixty-eight feet. Judging from the length of the skid marks it necessarily follows that at the time of the accident the taxicab must have been traveling at an unlawful and excessive rate of speed, and that the driver, without sounding a warning horn, rapidly and carelessly turned his machine in ahead of the street-car in spite of the congested condition of the traffic.

The record in this case therefore furnishes substantial evidence to support the implied findings of the jury to the effect that appellants were guilty of a lack of ordinary care, which was the proximate cause of the injuries resulting in the death of respondent's intestate. In view of the existence of the badly congested condition of traffic at this time and place, it was clearly negligent for the driver of the taxicab to thus suddenly swerve around and in front of the moving street-car at, an excessive rate of speed and without sounding a warning horn.

A taxicab driver is to be commended for prompt attention to the calls of his customers, but this diligence will not justify him in driving along a street which is congested with traffic at such an excessive rate of speed as to endanger the safety or lives of pedestrians who may be exercising their lawful privilege of using the street with such ordinary care for their own safety as would be required of a reasonably prudent person, consistent with the state of traffic under the surrounding conditions.

It is a well-established rule that an appellate court will not disturb the verdict of a jury based upon conflict of testimony where there is substantial evidence to support the judgment. (2 Cal. Jur. 921, sec. 543.) Nor can the court hold that the record, as a matter of law, discloses evidence which will warrant the court in finding that the deceased was guilty of contributory negligence. At the time of the accident the traffic had been stopped on Spring Street awaiting the sounding of the traffic signal. The approaching street-car and taxicab were clearly visible to the deceased. They were some seventy-five feet distant when he

passed between the machines parked at the curbing, and he looked to his left, whence danger was to be anticipated, before he attempted to cross the street. This seems to furnish substantial evidence which will refute a charge of contributory negligence, particularly since the burden was on the appellants to show such lack of ordinary care on the part of the deceased. We are therefore of the opinion that the judgment and the verdict are amply supported by the evidence.

Prejudicial error is claimed by appellants in the admission of testimony on the part of Hilda M. Hogg, which was given at the coroner's inquest, to rehabilitate her evidence at the trial after an effort was made to impeach her. The accident resulting in the death of the intestate occurred February 4, 1924; the coroner's inquest was held two days later, on February 6, 1924; the written statement of the witness offered for impeachment to show recent fabrication was taken March 14, 1924, and the trial of the case occurred February 5, 1925. In brief, the testimony of the witness, Hogg, was as follows: "I was on the west side of Spring street, . . . about the center of the southbound track, between Fourth and Fifth streets. . . . I saw both the taxicab and Mr. Davis (before the accident occurred). . . . The taxicab and street car were about a third of a block (away) coming south from Fourth street, . . . running parallel, and about the same rate of speed. I saw Davis come out from between the parked line of machines on the west side . . . and incline his head to the north. . . . They (the street car and taxicab) were away (from him) about as far as from here to the outer door (a distance of about sixty or seventy-five feet). The taxicab was right along the front side of the street car. . . . After looking toward the north he (Davis) looked straight ahead . . . and began to cross. . . . The taxi speeded up in order to get in front of the street car, . . . and wasn't quite straightened out . . . when it struck him. (He was) about a step from the southbound track, and it threw him up against the radiator and the fender of the taxi, . . . and sort of shooted him forward off the radiator, . . . and then struck him again. . . . When the taxi finally came to a stop, . . . the left hand wheel was in the center of the northbound track, . . . resting against his neck."

Upon cross-examination of the witness Hogg, her statement previously taken in writing March 14, 1924, by a representative of the appellants, who went to her room for that purpose and procured her to sign the same, was introduced in evidence for the avowed purpose of impeaching her. It is evident from the following colloquy between Mr. Pink, attorney for appellants, and Mr. Nourse, representing the respondent, that appellants believed and sought to give the jury the impression that the testimony given at the trial had been changed and recently fabricated as the result of the persuasion of Mr. Loveland, an associate in the law office of respondent's attorneys, in an interview which he held with the witness subsequent to the making of the written statement which was offered for impeachment purposes. Inquiry by Mr. Pink: "Q. Could you have Mrs. Hogg back here? I would like to ask her about her talking—Who talked to her out there at her home that night?" Mr. Nourse, replying: "A. Mr. Loveland, in my office, went out and talked to her. . . . Q. You don't know how long he was there?" Mr. Loveland speaking: "A. I think we talked over the case about half an hour. Q. How long were you there? A. I was there for a whole evening. Q. Two or three hours? A. Oh no, I would say an hour and a half. Q. Who else was there? A. A man by the name of Miller, and her (Mrs. Hogg's) sister were there. Q. Was Mr. Hogg there? A. Yes." Furthermore, in cross-examination of Mrs. Hogg, respecting this written statement, Mr. Pink, by the use of sarcasm, clearly implies that he believed the testimony given at the trial was the result of recent fabrication on the part of the witness. "Q. It (the statement) was correct? A. As far as I could (then) recollect. Q. You mean your recollection has improved, now that a year has gone by? A. I should like to state the condition I was in at that time. . . . Q. Your recollection has improved now that almost a year has gone by? A. Yes, it has. Q. And a year from now you will remember even better? . . . It (the statement) was made just a little over a month after the accident? A. Yes, sir." Mr. Pink, "I see." The inference was conveyed that because of domestic trouble the witness had not slept for several nights just prior to the time this statement was made.

The details of this written statement conform very closely to the testimony given at the trial, with the exception that the witness is there quoted as saying: "I saw the taxicab start to swerve . . . in front of the street car. . . . A business man stepped from between two automobiles parked at the west curb of Spring street. . . . *I saw him take just four quick steps, and step directly in front of the taxi,* which was going about ten or twelve miles an hour. . . . The taxi driver stopped just as soon as he could, twenty or thirty feet after he struck the man. . . . The taxi driver was doing all he could to avoid running over the man." It appears this statement was taken while the witness was subject to unusual mental strain and wearied from loss of sleep for three or four nights previous; it was reduced to writing by the representatives of appellants, and her signature was evidently reluctantly given after much urging on the part of the scrivener.

It is apparent from the record that appellants offered the former statement of the witness Hogg to impeach her on the theory that she had fabricated or colored her testimony given at the trial through the urgent inducement of respondent's attorneys, with whom a recent conference was developed by appellants, with the manifest inference that this interview was the cause of whatever conflict exists between her testimony at the trial and her former statement made to appellants.

Under such circumstances her testimony given under oath at the coroner's inquest two days after the occurrence of the accident and before she could have been subject to the inferred influence of respondent's attorneys was competent, since it corresponded with and corroborated in every material detail her challenged testimony given at the trial. Nor was its admission prejudicial error because counsel failed to assign the proper ground for its acceptance. If evidence is otherwise competent under the pleadings and the state of the record, it is not error to admit it merely because the ground authorizing its reception is erroneously stated. Upon the contrary one may not complain of the rejecting of evidence when, upon request, he fails to assign a proper ground for its admission. In the first instance the evidence is competent and therefore not prejudicial, while in the

latter case the court has not been informed of the legal ground authorizing its admission, and the refusal to admit it under such circumstances may be said to be the fault of the party offering it in improperly assigning the ground which would justify its reception.

It is now a well-settled rule in California and in most of the states of this nation that evidence of prior statements consistent with, or corresponding testimony given at a former hearing, are incompetent to rehabilitate the· testimony of a witness given at the trial, merely because an effort has been made to impeach her general reputation, or because evidence has been adduced of former statements inconsistent with her present testimony. (27 Cal. Jur. 178, sec. 153; 28 R. C. L. 654, sec. 238; Jones on Evidence, 3d ed., 1371, sec. 869; 1 Greenleaf on Evidence, sec. 469; 7 Ency. of Evidence, 231; 40 Cyc. 2787; *Mason* v. *Vestal,* 88 Cal. 396 [22 Am. St. Rep. 310, 26 Pac. 213]; *Barkly* v. *Copeland,* 74 Cal. 1 [5 Am. St. Rep. 413, 15 Pac. 307]; *People* v. *Doyell,* 48 Cal. 85; *People* v. *Shaw,* 36 Cal. App. 441 [172 Pac. 401].) But there is an equally uniform exception to this rule recognized by all the authorities to the effect that, where the witness is charged with changing or coloring his testimony from ulterior motives or that his evidence is a fabrication of recent date, his previous statements corresponding to the testimony given at the trial are competent, particularly if they are made prior to the impeaching statement for the purpose of rehabilitating his evidence and refuting the inference of recent fabrication, or that the testimony was given as a result of improper influence or because of undue interest. (27 Cal. Jur. 179, sec. 153; 28 R. C. L. 655, sec. 239; 40 Cyc. 2787; Wharton's Criminal Evidence, 10th ed., sec. 492; 2 Wigmore on Evidence, 2d ed., 642, secs. 1126–1129; 6 Jones' Commentaries on Evidence, 4864, sec. 2456–2458; 7 Ency. of Evidence, 235; *California Electric Light Co.* v. *California Safe Dep. Co.,* 145 Cal. 124 [78 Pac. 372]; *Barkly* v. *Copeland,* 74 Cal. 1 [5 Am. St. Rep. 413, 15 Pac. 307]; *People* v. *Doyell, supra; People* v. *Billings,* 34 Cal. App. 549 [168 Pac. 396]; *Walsh* v. *Wyman,* 244 Mass. 407 [138 N. E. 389]; *State* v. *Spisak,* 94 Wash. 566 [162 Pac. 998]; *People* v. *Purman,* 216 Mich. 430 [185 N. W. 725]; *In re McClellan's Estate,*

21 S. D. 209 [111 N. W. 540]; *Zell* v. *Commonwealth,* 94 Pa. 273; *Gilbert* v. *Sage,* 57 N. Y. 639; *Baber* v. *Broadway etc. Co.,* 9 Misc. Rep. 20 [29 N. Y. Supp. 40]; *Griffin* v. *Boston,* 188 Mass. 475 [74 N. E. 687]; *Weller* v. *People,* 209 Ill. 284 [70 N. E. 681]; *McLain* v. *British F. M. I. Co.,* 16 Misc. Rep. 336 [38 N. Y. Supp. 77].)

Numerous cases are cited by appellants to uphold this contention that the instant case does not fall within the exception of the rule above stated. There is neither substantial dispute as to the rule of law nor as to the exception thereto. The difficulty, however, arises in an effort to apply the law to the facts and circumstances of a particular case. It would be an arduous and useless task to attempt to reconcile and discriminate these various cases. In 2 Wigmore on Evidence, at page 642, is found an interesting discussion of this subject, wherein the author attempts to reconcile the conflicting arguments upon this subject found in many of the leading cases. In support of the admission of former corresponding statements to rehabilitate the evidence of a witness sought to be impeached this text says: "On behalf of the admission of the supporting evidence, the earlier and conventional argument is that if a contradictory statement counts against a witness, a consistent one should count for him." Upon the contrary, the modern prevailing view is that ordinarily such statements are inadmissible. They are not evidence in themselves (27 Cal. Jur. 169, sec. 143), and where the conflict is conceded it is said: "Since the self-contradiction is conceded, it remains as a damaging fact, and is in no sense explained away by the (former) consistent statement. It is just as discrediting if it was once uttered, as though the other story had been told a score of times." This latter view is the one relied upon by appellants in the instant case, and was forcefully expressed by Mr. Justice Bigelow in the case of *Commonwealth* v. *Jenkins,* 10 Gray (Mass.), 488. But the able author of Wigmore on Evidence says with respect to this argument: "Forceful as it seems at first sight, it is itself, in one respect based on a fallacy." For after all, regardless of apparent conflicting statements made by a witness, either on the stand or out of court, it still becomes the duty of a jury to determine the facts and ascertain, if possible, which

story speaks the truth. While the statute (Code Civ. Proc., sec. 2061, subd. 3) provides "that a witness false in one part of his testimony is to be distrusted in others," this is a mere rule to guide the court and the jury in determining the credibility of the witness and the weight of his testimony. Nevertheless, "it is exclusively within the province of a trial judge (or jury) to determine to what extent the falsity of a part of the testimony . . . (or of former conflicting statements) affects the credibility of other statements." (10 Cal. Jur. 1148, sec. 365.) And likewise it has been held that "the jury may give credence to a witness who is false in a material part of his testimony, or to one whose testimony contains contradictions and inconsistencies." (27 Cal. Jur. 183, sec. 156.) In the case of *Stewart* v. *People*, 23 Mich. 76 [9 Am. Rep. 78], Mr. Justice Cooley, one of the most eminent jurists this country has produced, refutes the argument of Mr. Justice Bigelow in the Jenkins case, *supra*, and concludes by saying: "We think the circuit judge ought to be allowed a reasonable discretion in such cases, and though the evidence should not generally be received, yet his discretion in receiving it ought not to be set aside except in a clear case of abuse." Particularly is this true where an impeaching statement has been taken under circumstances such as appears in the instant case, which leaves a grave doubt as to the accuracy or binding effect of such a statement, and under circumstances which makes a former statement of the witness made immediately after the accident, when there was no intimation of bias, prejudice or favoritism, peculiarly forceful and valuable to aid the jury in ascertaining the truth. In 2 Wigmore on Evidence, page 647, it is said: "A consistent statement at a time prior to the existence of a fact said to indicate bias, interest or corruption will effectively explain away the force of the impeaching evidence, because it is thus made to appear that the statement in the form now uttered was independent of the discrediting influence. The former statements are therefore admissible."

It is not necessary that the party seeking to impeach the witness shall expressly state that his evidence is offered to prove a fabrication of recent date, nor to charge that the recent evidence was given under improper induce-

ments in order to authorize the admission of corresponding statements made upon a prior occasion. It is sufficient if the evident purpose of the impeaching party, as disclosed by the record, indicates this to have been his purpose. In the case of *Griffin* v. *Boston, supra,* after stating the general rule, which excludes former corresponding statements, the court says: "But there is one exception to this rule, and that is when it appears from the cross-examination, or otherwise, that it may be the purpose of the cross-examining counsel to show that the testimony was a recent invention, or impressed upon a witness by some undue influence. In such a case it is permissible for the purpose of restoring the credit of the witness to show that the testimony he makes upon the stand is like the statement he made shortly after the accident. . . . The plaintiff's counsel contended that the purpose of the cross-examination was simply to test the recollection of the witness, but we are of the opinion that, while some of the questions and answers were for that purpose, the purpose also existed to impeach the witness and to show that his testimony was a recent fabrication, created under the influence of the attorney for the defendant, in his office shortly before the trial." Likewise, in *Baber* v. *Broadway etc., supra,* it is said: "In order to come within the above exception to the rule it is not necessary as contended by appellant's counsel, that there be a direct charge of fabrication." To the same effect it is similarly held in *In re McClellan's Estate,* and in *Zell* v. *Commonwealth, supra.*

■ Appellants contend that the court erred in giving the following instruction, to wit: "The burden is upon the defendant to prove the negligence of Harvey D. Davis by a preponderance of the evidence, and in considering the evidence upon this point you will keep in mind that the law presumes that Harvey D. Davis, at the time in question here, took ordinary care of his own concerns."

This was a correct statement of the law. Section 1963 of the Code of Civil Procedure, subdivision 4, provides: It is a presumption "that a person takes ordinary care of his own concerns." This disputable presumption declares no more than is asserted in the familiar maxim that "self-preservation is the first law of life." This presumption is itself declared to be evidence (Code Civ. Proc., sec. 1957;

*Stafford* v. *Martinoni,* 192 Cal. 724 [221 Pac. 919] ; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332, 339 [187 Pac. 996] ; *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 7 [210 Pac. 269]), and is entitled to be weighed by the jury, together with all the other evidence in the case in determining the issue involved. In the absence of evidence to the contrary this presumption will prevail. (*Chalmers* v. *Hawkins,* 78 Cal. App. 733 [248 Pac. 727] ; *Hatzakorizian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 97 [41 A. L. R. 1027, 239 Pac. 709] ; *Crabbe* v. *Mammoth C. G. M. Co.,* 168 Cal. 500, 506 [143 Pac. 714] ; *Everett* v. *Standard Acc. Ins. Co., supra.*) Like any other species of evidence this presumption may be rebutted. Where one relies upon a defense of contributory negligence the party charged with such negligence is entitled to the benefit of the legal presumption that he exercised ordinary care, and the defense must overcome this presumption in order to obtain a favorable judgment in this regard. ▉ Moreover, in the instant case the identical language of this presumption was incorporated in an instruction given to the jury at the request of the appellants. It necessarily follows that one may not complain of an instruction declaring the very principle of law which is given to the jury at his own request. (2 Hyatt on Trials, sec. 1429.)

▉ Appellants also complain of the giving of an instruction which quoted substantially the language of section 113a of the California Motor Vehicle Act [Stats. 1923, p. 553], to the effect that the driver of a vehicle upon a public street or highway must operate it in a careful and prudent manner, and at a rate of speed consistent with the existing state of traffic. This instruction read as a whole in connection with the other instructions, which fully and fairly advised the jury of the traffic law applicable to similar situations, was not misleading or prejudicial. ▉ So, also, the jury was clearly instructed that their verdict must rest upon a preponderance of the evidence. The use of the phrase in one of the instructions to the effect that "unless the presumption (of the exercise of due care) is overcome *by satisfactory evidence,* you will find for the plaintiff," could not have been misleading, for the jury was repeatedly informed that a preponderance of the evi-

dence alone was sufficient upon which to justify a verdict. ▉ Nor is the instruction prejudicial, wherein appellants contend all of the elements of liability were not included, because it failed to exempt them from liability unless under the circumstances they should have reasonably anticipated the accident. The jury was fully instructed upon the reciprocal duties and obligations of the respective parties, and the instructions must be considered as a whole. ▉ Fairly construed the several instructions offered by respondent affecting the measure of damages were specifically limited to a recovery of the pecuniary loss suffered on account of the death of respondent's intestate. This is a correct basis upon which to estimate damages in the instant case. (8 Cal. Jur. 1003, sec. 51.) One instruction is criticised because it contained the statement that in estimating the pecuniary loss the jury might consider "the disposition of the said Harvey D. Davis as to whether it was kindly and affectionate or otherwise." This was not erroneous since it was confined to elements only which may be considered in estimating pecuniary loss, and since it is proper to consider the pecuniary loss a widow sustains in being deprived of the society, comfort, and protection of her husband. (8 Cal. Jur. 1007, sec. 53.) Taken as a whole we are of the opinion that the jury was fully and fairly instructed as to the law of the case, and that no prejudicial error exists therein.

For the foregoing reasons the judgment is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 23, 1928.

All the Justices present concurred.