[Civ. No. 10257.   Third Dist.   Mar. 15, 1962.]

ARTHUR LOSER, Plaintiff and Appellant, v. E. R. BACON COMPANY et al., Defendants and Respondents.

Mannino & Lancaster, Burt Lancaster and Mento, Buchler & Littlefield for Plaintiff and Appellant.

McGregor, Bullen, Saldine & Erich, George W. Bullen, Fitzwilliam, Memering & McDonald and Robert H. Memering for Defendants and Respondents.

SCHOTTKY, J.—Arthur Loser commenced an action against E. R. Bacon Company and Clary Manufacturing Company to recover damages for injuries incurred when his left hand became enmeshed in a V-belt and pulley driven by a gasoline engine. The case was tried to a jury and a verdict was returned in favor of the defendants. Plaintiff has appealed from the judgment entered on said verdict.

Loser, an employee of Bo-Son, Inc., brought this action against E. R. Bacon Company on the theory that it had furnished his employer with a defective machine, and against Clary Manufacturing Company, the manufacturer, on the theory it had negligently designed the machine. The complaint was filed on October 23, 1958, and an amended complaint was filed in January 1959. Clary Manufacturing Company filed its answer on February 9, 1959, and E. R. Bacon Company filed its answer on March 26, 1959. On December 11, 1959, Loser filed a second amended complaint in which a cause of action based on breach of warranty was added. No prior permission was sought of the court to file the second amended complaint. E. R. Bacon Company made a motion to strike the complaint. After a hearing the motion was granted and the second amended complaint was stricken ''without prejudice to whatever rights plaintiff may have to file another amended complaint after proper notice and permission of the Court if the same be granted.''

Appellant's first contention is that the court erred in striking his proposed second amended complaint. He argues that prejudice to the defendants must be shown before a court may strike a complaint. There is no merit in this contention. The right of a plaintiff to amend his complaint under the provisions of section 472 of the Code of Civil Procedure is extended only up to the time the defendant's answer is filed. Once the defendant's answer is filed, the plaintiff's right to amend as a matter of course is gone. (*Tingley* v. *Times Mirror Co.,* 151 Cal. 1 [89 P. 1097].) Section 473 of the Code of Civil Procedure provides in part that the court may in its discretion, after notice to the adverse party, allow a

party to amend any pleading. ▮ As stated in 2 California Pleading, Civil Actions, Chadbourn, Grossman and Van Alstyne, section 1101: "Amendments prior to trial under Code of Civil Procedure section 473 ordinarily must be sought by noticed motion in accordance with the general principles governing such motions discussed elsewhere in this text. The notice of motion for leave to amend should be supported by appropriate affidavits explaining the purpose and need for the amendment, and the reason for failure to raise the issues earlier; the nature of the proposed amendment should be indicated in the notice of motion or (preferably) by presenting the proposed amendment itself to the court."

This procedure was not followed. ▮ A court may, by virtue of its inherent power to prevent abuse of its processes, strike an amended complaint which is filed in disregard of established procedural processes. (*Neal* v. *Bank of America,* 93 Cal.App.2d 678 [209 P.2d 825].) While in the instant case the motion to strike was made by only one of the defendants, the court could under its inherent power strike the amended pleading as to both because no request for permission to amend was sought by the court. The action of the court was not an abuse of discretion because the order was made without prejudice to the rights of the plaintiff to file another amended complaint after proper notice and permission of the court, if the same were granted.

Appellant contends also that the court erred in excluding certain testimony offered to show the witness Floyd Most fabricated his testimony as to the conversation with appellant. Most conversed with appellant at the hospital. Appellant's parents were present during part of the conversation. Most also testified that he had discussed the case with appellant's father after his conversation with the appellant. The testimony which appellant sought to introduce was a statement made by Most to appellant's father after his conversation with appellant that he did not know how the accident happened. The trial court excluded the statement on the ground that no foundation for impeachment had been laid. The record does not disclose that appellant asked Most on cross-examination what he told appellant's parents in the conversation.

▮ It is the general rule that a foundation must be laid before a witness may be impeached by the use of a prior inconsistent statement. As stated in McCormick on Evidence at page 70: "The preliminary question requirement when complied with conduces to fairness and economy of time.

When overlooked by the impeacher, as it often is, then it seems that the judge should have a discretion to consider such factors as whether the impeaching counsel knew of the inconsistent statement when he cross-examined, the importance or unimportance of the testimony under attack, and the practicability of re-calling the witness for denial or explanation, and in the light of these circumstances, to permit the impeachment without the foundation if it seems fairer to do so.''

Upon the record in the instant case we would not be justified in holding that the court erred in excluding the evidence.

There is no merit in appellant's further contention that the court should have instructed the jury that the doctrine of assumption of risk was not applicable to the case. There was a violation of a safety order (absence of a guard) so the defense of assumption of risk was not applicable. What this court said in *Williams* v. *Pacific Gas & Electric Co.*, 181 Cal.App.2d 691 [5 Cal.Rptr. 585], at page 705, is applicable to the instant case: ''In the instant case there was evidence from which it could be inferred that appellant violated a safety order of the Division of Industrial Safety, and if the jury reached that conclusion, the defense of assumption of risk could not be sustained for as stated in *Maia* v. *Security Lumber & Concrete Co.*, 160 Cal.App.2d 16, at page 20 [324 P.2d 657] : 'The defenses of contributory negligence and assumption of risk are separate and distinct defenses. While the defense of contributory negligence was available to defendant, the same cannot be said as regards the doctrine of the assumption of risk. It is ''elementary law'' said the court in the *Atherley* case, that '' 'in cases of violation of a safety regulation the defendant cannot defend on the ground that the plaintiff for whose protection the regulation was passed assumed the risk.' '' (*Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107] ; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17].) . . .' '' To have given the instruction on assumption of risk requested by appellant would only have confused the jury by injecting an immaterial issue into the case. It was properly refused.

Appellant's penultimate contention is that the court erred in instructing the jury that ''if you find in favor of the defendants and against the plaintiff the said plaintiff will not be required to reimburse the insurance company for the sums paid.'' The quoted words followed an instruction in the language of BAJI No. 157, which stated:

"It appears from the evidence that an insurance carrier for his employer, has made certain expenditures in the care and treatment of plaintiff because of such injury.

"You are instructed that if the plaintiff should recover a judgment in this action, said employer's insurance company will have a first lien upon that judgment to reimburse it for the sums so paid by it for the plaintiff.

"Hence, if you should decide the plaintiff is entitled to a judgment against defendant[s], you will find his damages in accord with my instructions, and you will not deduct from the sum so found any amounts which have been paid by said insurance company to the plaintiff or to others for plaintiff's care and treatment."

The portion of the above instruction which appellant contends it was error for the court to give is a correct statement of law, and while it was perhaps unnecessary to give it, we cannot agree that the court erred in giving it.

The most serious contention of appellant is that the court committed prejudicial error in excluding certain rebuttal testimony offered by him. Appellant testified that the accident occurred when his hand slipped off of the top of the machine. He stated that he wanted to examine the machine to see if the belts were slipping. He placed his hand on top of the machine, stooped, looked in, and as he started to rise his hand slipped and became enmeshed in the belts of the machine. The moving parts were approximately 18 inches inside the machine and appellant's hand came in contact with them causing the injuries in question. Appellant contended that the injury was the result of an accident; that the lack of a guard over the opening into the inner portion of the machine constituted negligence on the part of the defendant; and that this negligence was the proximate cause of the injury. Respondents contended that appellant deliberately placed his hand inside the opening; that the lack of a guard was not a proximate cause of the accident; that, in any event, in so doing appellant was himself negligent; and that his negligence was a proximate cause of the accident.

Floyd Most, foreman of appellant's employer, Bo-Son, testified on behalf of respondents that he visited appellant at the hospital on the evening of the accident and that appellant stated to him, "I was a damn fool. I stuck my hand in there."

In rebuttal appellant produced a witness, Ferdinand Wood, who testified that he saw appellant in the hospital the day following the accident and that appellant gave him some

information as to the manner in which the accident happened. He was then asked by counsel for appellant "What did Mr. Loser tell you?" The trial court sustained an objection to the question as calling for self-serving hearsay. Appellant's counsel made an offer to prove that if Mr. Wood had been allowed to answer the question he would have ". . . testified to the effect that Mr. Loser told him that he wasn't quite sure what did happen, but that he slipped and fell, words to that effect, slipped and fell into the belt."

We have concluded that the court erred in excluding the offered testimony. ■■■ It is well settled in this and other states that when a witness has been impeached the opposing party cannot rehabilitate that witness by showing that at other and different times the witness made statements out of court, and out of the presence of the other party, in harmony with his present testimony. To that rule there is a limited exception. That exception is that where the witness is charged with testifying under the influence of some motive prompting him to make a false statement or that his evidence is a fabrication of recent date, such rehabilitating evidence is admissible.

In *People* v. *Bias*, 170 Cal.App.2d 502 [339 P.2d 204], the court said at page 511: "On cross-examination Mary Ellen, who testified at the trial that defendant said 'Blow it,' was asked if at the preliminary examination she had said that defendant did not say anything while on her bed. Admitting this, Mary Ellen stated that she 'didn't want to say it before.' On redirect the prosecution asked her if the day after the affair she told Officer Showalter that defendant had said something to her. She then said that she had told the officer that defendant had said the exact words she used on her direct testimony. Officer Showalter, over objection, corroborated Mary Ellen's testimony.

"Ordinarily, prior consistent statements cannot be introduced to rebut impeaching evidence. However, one exception to this rule is the admissibility of prior consistent statements in answer to an express or implied charge that the trial testimony was recently fabricated. (*People* v. *Carter* (1957) 48 Cal.2d 737, 749 [312 P.2d 665]; *People* v. *Hardenbrook* (1957), 48 Cal.2d 345, 351 [309 P.2d 424]; *Davis* v. *Tanner* (1927), 88 Cal.App. 67, 73 [262 P. 1106]; *Bickford* v. *Mauser* (1942), 53 Cal.App.2d 680, 684 [128 P.2d 79]; *People* v. *Kynette* (1940), 15 Cal.2d 731 [104 P.2d 794]; *People* v. *Weatherford* (1947), 78 Cal.App.2d 669, 696 [178 P.2d 816].)

The dissenting opinion in *Bickford* v. *Mauser, supra*, 53 Cal. App.2d at page 689, stated that the exception to the rule of admissibility is limited to meeting a charge of recent fabrication and that in that case there was no such charge made; there was simply a situation of impeachment by evidence of prior inconsistent statements. While there is no case which flatly considers the question raised by the dissent in the *Bickford* case, a recent Supreme Court case appears to indicate that the exception may apply without any direct charge of fabrication. In *People* v. *Hardenbrook, supra*, 48 Cal.2d 345, 351, testimony of a prior statement was admitted for the limited purpose of rehabilitation. A witness testified to a conversation with the defendant which the defendant denied. The prosecution offered a witness who testified as to prior statements of the first witness concerning the conversation. No charge of recent fabrication was made yet the prior statements were held admissible. In *People* v. *Carter, supra*, 48 Cal.2d 737, it was held error to exclude testimony of prior statements offered by the defendant to rehabilitate impeaching testimony. The opinion stated that the defendant had a right to introduce this testimony 'to rebut the prosecution's charge that his story was a recent fabrication.' (P. 749.) Just how this charge was made does not appear in the record. In our case Mary Ellen's testimony was vital to the prosecution. The very fact that defendant sought to impeach her on an important circumstance of the crime, proving a statement at the preliminary examination contrary to that made at the trial, is in effect a charge of recent fabrication. We see no error in the court's ruling. . . .''

In *People* v. *Carter*, 48 Cal.2d 737 [312 P.2d 665], the court said at page 749: ''The court also erred in excluding the testimony of defendant's minister. Defendant offered the testimony of Reverend Crouch that on October 4th defendant told him the same story as he told on the stand: that he had left the Log Cabin, and then returned and found Carey lying on the floor of the card room, and in turning him over got blood on his clothes. At the time he told this story to Reverend Crouch, defendant did not know that the blood on his clothes had been analyzed as Carey's type or that hairs similar to Carey's had been found on his trousers. Defendant had a right to introduce this testimony to rebut the prosecution's charge that his story was a recent fabrication. (See *People* v. *Hardenbrook, ante*, pp. 345, 351-352 [309 P.2d 424]; *People* v. *Walsh*, 47 Cal.2d 36, 48 [301 P.2d 247]; *People* v. *Kynette*,

15 Cal.2d 731, 753-754 [104 P.2d 794], cert. denied, 312 U.S. 703 [61 S.Ct. 806, 85 L.Ed. 1136].) . . ."

And in *People* v *Hardenbrook,* 48 Cal.2d 345 [309 P.2d 424], the court said at page 351: "It is contended by defendant that the trial court committed prejudicial error in permitting the witness Hum to testify concerning the conversation Potter had repeated to him on the night prior to the commission of the crime. 'It is the rule generally and in this state that where the opposition has assailed the testimony of a witness as being of recent fabrication, an exception to the hearsay rule allows the admission of evidence of statements or conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial, "not to prove the facts of the case, but as tending to show that the witness has not been controlled by motives of interest and that he has not fabricated something for the purpose of the case." (*People* v. *Kynette,* 15 Cal.2d 731, 753-754 [104 P.2d 794]; see also *Sweazey* v. *Valley Transport, Inc.,* 6 Wn.2d 324 [106 P.2d 567, 11 P.2d 1010, 140 A.L.R. 1]; 140 A.L.R. 93)' (*People* v. *Walsh,* 47 Cal.2d 36, 41 [301 P.2d 247].) It is apparent that the court did not err in permitting the witness Hum to testify since the jury was clearly informed that such testimony was admitted only for the limited purpose set forth in the decided cases as an exception to the hearsay rule. (See also *People* v. *Doetschman,* 69 Cal.App.2d 486, 491-492 [159 P.2d 418]; *Bickford* v. *Mauser,* 53 Cal.App.2d 680, 686-687 [128 P.2d 79]; *Davis* v. *Tanner,* 88 Cal.App. 67, 76-77 [262 P. 1106].)" (See also 75 A.L.R.2d 933; and McCormick on Evidence, pp. 108-109.)

Having concluded that the court erred in not permitting appellant's witness Wood to answer the question as to what appellant told him in the hospital the day following the accident, we must next determine whether or not this error requires a reversal of the judgment. Section 4½ of article VI of our state Constitution reads as follows: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

We have carefully examined the record in the instant case

which was tried by able and experienced counsel and was presided over by an able trial judge who after full hearing denied appellant's motion for a new trial. Taking the record as a whole, and bearing in mind the plain and meaningful language of the Constitution hereinbefore quoted, we are satisfied that even if appellant is correct in some of his contentions of error, no miscarriage of justice has resulted.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.