[Civ. No. 20639. Third Dist. June 23, 1982.]

ASIA INVESTMENT COMPANY, LTD., Plaintiff and Appellant, v. STANLEY E. BOROWSKI et al., Defendants, Cross-complainants and Respondents;
A. GRANT MACOMBER, Cross-defendant and Respondent.

COUNSEL

Guthrie, McCaleb & Fong, Jerry L. Guthrie and Philip A. McCaleb for Plaintiff and Appellant.

Wayne N. Stephenson, Jay-Allen Eisen and Michael Rothschild for Defendants, Cross-complainants and Respondents and for Cross-defendant and Respondent.

OPINION

ABBE, J.*—This appeal from a judgment for defendants following the granting of their motion for summary judgment is the latest chapter in an extended saga of litigation. To understand the nature of the current battle, we must proceed back to its genesis and recount the ignominious history of this war.

### THE FACTS

Stanley Borowski, a real estate broker, and Steve Wong, a real estate agent, had conducted some business together as early as 1975. On June 1, 1978, Wong, acting as general partner for plaintiff Asia Investment (hereafter referred to as Asia) filed a complaint against Borowski and Leonard and Beverly Schroader[1] (Mr. Borowski's daughter and son-in-law) in a dispute over the ownership and possession of a house. (Hereafter the house case.) The house was located in a tract of land known as the "Cirby Ranch" which Asia was seeking to develop.

The Borowskis answered the complaint and filed a cross-complaint for specific performance, alleging Wong had orally promised to give them the house (severed from the land), and they had moved into it in reliance on that promise. Asia answered the cross-complaint acknowledging the oral promise but alleging the agreement was conditioned on the Borowskis moving the house off the property. On November 28, 1978, Borowski filed a separate cross-complaint against Asia seeking compensation which Wong allegedly owed him on an earlier agreement.

---

*Assigned by the Chairperson of the Judicial Council.

[1]For the sake of convenience, Borowski and the Schroaders will hereafter be referred to collectively as the "Borowskis."

In April 1979, while the house case was still pending, the Borowskis filed a new action in which the Borowskis sought a writ of mandate to compel Asia and the City of Roseville to comply with the provisions of the California Environmental Quality Act (CEQA) in the planned development of the Cirby Ranch property. (Hereafter referred to as the CEQA action.) The Borowskis also sought a preliminary injunction restraining Asia from further development of the property until the city prepared an environmental impact report. The general thrust of the CEQA action was that the city had improperly filed a "negative declaration"[2] for the project despite certain allegedly significant adverse environmental impacts. (See Pub. Resources Code, § 21151.) An alternative writ and order to show cause were issued. Asia's amended return to the petition denied the city was required to prepare an environmental impact report and pled laches among other affirmative defenses.

On motion by Asia, unopposed by the Borowskis, the court proceeded to try the laches issue separately and before a hearing on the merits of the petition. On June 1, 1979, the trial court found the Borowskis guilty of laches in bringing the petition, discharged the alternative writ and denied the petition for a peremptory writ.

On June 5, 1979, Asia filed the action with which we are presently concerned. Asia's complaint alleged the Borowski's CEQA action was a malicious prosecution and a tortious "interference with contract." The Borowskis answered the malicious prosecution complaint in mid-July and also filed a demurrer which was never set for hearing. The house case proceeded to trial in late July, and on July 26, 1979, after four days of trial, the parties reached a settlement.

On August 16, 1979, Mr. Macomber, counsel for the Borowskis in the CEQA action filed a complaint in the municipal court against the Borowskis for attorney's fees for services rendered in the CEQA action. The Borowskis filed an answer and a cross-complaint in which they charged Macomber with malpractice in the prosecution of the CEQA action. This matter was transferred to the superior court where it was consolidated with the malicious prosecution action. At the same time,

[2]A "negative declaration" is a written statement by the responsible public agency that a proposed project will not have a significant impact on the environment and does not require the preparation of an environmental impact report giving the reasons for this conclusion. (See Pub. Resources Code, § 21064.)

the Borowskis were granted leave to amend their cross-complaint against Macomber to assert equitable indemnification for any recovery against them in the malicious prosecution action.

Both Macomber and the Borowskis moved for summary judgment in the malicious prosecution case. Asia opposed the summary judgment motions and also sought leave to amend its complaint. A single hearing was held, at which time the court heard the summary judgment motions, the motion to amend the complaint, as well as a motion by Asia to compel discovery.[3] At the close of argument, the trial court granted the motions of the Borowskis and Macomber for summary judgment and denied Asia's discovery motion. The motion seeking leave to amend was taken under submission, and was subsequently denied. From this resolution to this morass of litigation, Asia now appeals.

## Discussion

Asia presents two theories of reversible error on appeal. First, Asia contends the order dismissing the CEQA petition on the basis of laches was a termination of that action favorable to Asia which supports its action for malicious prosecution. Second, it contends the trial court abused its discretion in denying Asia leave to amend the complaint. We find neither argument persuasive.

## I

In order for a plaintiff to state a cause of action for malicious prosecution, he "must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379].) "'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge . . . against an innocent person.'" (*Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 826 [145 Cal.Rptr. 829], citing *Jaffe v. Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].) A termination is therefore "favorable" if its nature is such as to indicate the innocence of the accused. If, on the

---

[3]At a scheduled deposition in the malicious prosecution action both Borowski and Macomber refused to answer questions asserting the privilege against self-incrimination. (See Evid. Code, § 940.) Asia's motion sought to compel answers.

other hand, "the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination." (*Minasian* v. *Sapse, supra*, 80 Cal. App.3d at p. 826.) ▮▮ The question presented here, therefore, is whether the denial of the petition for writ of mandate on the grounds of laches represents a "favorable termination" for Asia.

The leading case on the issue is *Lackner* v. *LaCroix* (1979) 25 Cal.3d 747 [159 Cal.Rptr. 693, 602 P.2d 393]. *Lackner* addressed the question of whether a judgment based on the statute of limitations was a favorable termination for purposes of a malicious prosecution action. The court, in holding it was not, noted a "favorable termination" does not occur merely because the defendant prevails in the underlying action. (*Id.* at p. 751.) "If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable" in the required sense. (*Id.*)

The successful laches defense in the present case has no more bearing on any alleged wrongful conduct of Asia than the statute of limitations defense did in *Lackner*.[4] The denial of the petition on the basis of laches did not reflect in any way on the merits of the petition. The court tried the laches issue first by consent of the parties and never had to reach the merits of the petition. To establish laches the defense was obligated to show an unreasonable delay in bringing the action by plaintiffs as well as either acquiescence in defendant's conduct or prejudice. (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].) The Borowskis waited for approximately a year after tentative approval of the project before initiating their CEQA action. The Borowskis were present at the various planning commission and city council meetings at which the project was discussed and did not voice their objections. Asia had expended a significant sum of money on the project in reliance on the unopposed, tentative approval of the project by the City. Although the propriety of the dismissal of the petition for writ of mandate is not before us, it appears the defendants City and Asia demonstrated all the necessary elements of the

---

[4]It is not clear how any termination of the CEQA action could have reflected on the innocence of Asia of any alleged wrongdoing, as the thrust of the CEQA action was that the *City* had failed to comply with the statutory requirements. Despite Asia's admittedly large stake in the CEQA action, there was no allegation Asia participated in any "wrongdoing" whatsoever. As no wrongful conduct on Asia's part was alleged, we fail to see how any termination of the action would have reflected on its "innocence."

defense of laches, none of which reflected on whether the City had adequately complied with the requirements of CEQA.

In *People* v. *Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185 [119 Cal.Rptr. 266], we upheld a laches defense to a CEQA lawsuit, despite the fact defendant had violated CEQA by issuing a permit without first making a determination whether the project would have a significant effect on the environment. (*Id.* at p. 194.) The *Department of Housing & Community Dev.* case illustrates that a successful laches defense does not reflect on the merits of such a petition. Asia contends the judgment of laches reflects on the "equitable merits" of the underlying action. Even if this were so, such a reflection does not necessarily control the legal issues. For all that appears from the record, the Borowskis may have been correct in their allegations of CEQA violations, but as stated before, the trial court never reached those issues. The dismissal of the petition was for a reason not inconsistent with the "guilt" of Asia or the City, and for that reason did not constitute a "favorable termination" for purposes of a malicious prosecution action. (*Minasian* v. *Sapse, supra*, 80 Cal.App.3d at p. 826.)

■ "The purpose of the summary judgment procedure is to provide a speedy remedy against fictitious causes of action and defenses." (*Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435, 441 [84 Cal.Rptr. 421].) ■ It is hard to conceive a case more appropriate than this for the exercise of the summary judgment procedure.

## II

■ Asia contends the trial court erred in denying leave to amend its complaint. Asia's proposed first amended complaint listed three causes of action: 1) malicious prosecution; 2) interference with business opportunity; and 3) abuse of process. Asia concedes, as it must, that its motion for leave to amend its complaint was committed to the sound discretion of the trial court. (*Fortenberry* v. *Weber* (1971) 18 Cal.App. 3d 213, 222 [95 Cal.Rptr. 834].) As a general rule, the ruling of the trial court will be upheld unless a manifest or gross abuse of discretion is shown. (*Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 135 [125 Cal.Rptr. 59].) Asia contends an abuse of discretion did occur as: 1) it had a right to amend pursuant to Code of Civil Procedure section 472; 2) any delay in filing for leave to amend was caused by respondents; and 3) the proposed amended complaint was sufficient to state

each cause of action. Bearing in mind that abuse of discretion is shown by an arbitrary determination, capriciousness or whimsical thinking, we must determine whether the trial court's ruling in denying leave to amend so exceeded the bounds of reason as to constitute an abuse of discretion. (*City of Fresno* v. *California Highway Com.* (1981) 118 Cal.App.3d 687, 700 [173 Cal.Rptr. 671].)

As an initial matter we reject Asia's contention it had a right to an amendment as a matter of course pursuant to Code of Civil Procedure section 472.[5] ██ "The right of a plaintiff to amend his complaint under the provisions of section 472 of the Code of Civil Procedure is extended only up to the time the defendant's answer is filed. Once the defendant's answer is filed, the plaintiff's right to amend as a matter of course is gone." (*Loser* v. *E. R. Bacon Co.* (1962) 201 Cal.App.2d 387, 389 [20 Cal.Rptr. 221].) ██ The Borowskis' answer was filed some 20 months prior to Asia's motion for leave to amend. Asia's right to amend as a matter of course had long since expired regardless of the Borowskis' failure to act on their demurrer.

In examining Asia's proposed amended complaint, we conclude all of the three causes of action listed are fatally defective. Asia failed to show in its original complaint the CEQA action resulted in the "favorable termination" required to support a malicious prosecution action. Any amended cause of action for malicious prosecution based on the same set of facts must fail for the same reason.

Asia acknowledges its tort of "interference with business opportunity" was an effort to plead the tort more commonly referred to as "intentional interference with prospective business advantage." (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 392, p. 2643 et seq.) Regardless of the name used, however, we conclude Asia has not stated a cause of action for several reasons. First, Asia is unable to assert any business relationship with which there has been a tortious interference. ██ As set out in (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537, P.2d 865], the elements of the tort of interference with prospective business advantage are: 1) an economic relationship between the plaintiff and some third person containing the

---

[5]Code of Civil Procedure section 472 provides in relevant part: "Any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed, or entered in the docket, or after demurrer and before the trial of the issue of law thereon, by filing the same as amended and serving a copy on the adverse party, ..."

probability of future economic benefit to the plaintiff; 2) knowledge by the defendant of the existence of the relationship; 3) intentional acts on the part of defendant designed to disrupt the relationship; 4) actual disruption of the relationship; and 5) damages proximately caused by the acts of defendant. ██ Asia's proposed amended complaint alleged only the Borowskis' CEQA action interfered with the City's approval of Asia's subdivision. The relationship between Asia and the City cannot be characterized as an economic relationship. It was Asia's relationship to a class of as yet unknown purchasers which was the prospective business relationship. Asia did not, and was unable to, plead any actual disruption of this prospective business relationship. The entire period of time consumed from filing of the writ petition to its denial was about five weeks. (April 25, 1979 to June 1, 1979.) Moreover, final approval of the subdivision had not been obtained at the time the CEQA action was filed. (An order restraining final approval was the relief sought.) It is clear that Asia was not in a position to enter into an economic relationship (i.e., the sale of lots with anyone) with which the Borowskis could have tortiously interfered.

Even assuming Asia adequately stated a prospective business advantage, we conclude the allegedly tortious conduct was privileged. Asia alleges the filing of the CEQA action was the tortious act. It contends the Borowskis failed to show a privileged publication which falls within the ambit of Civil Code section 47, subdivision 2.[6] It is clear, however, the filing of a complaint or petition is in itself a publication which is privileged because it is required by law to initiate the judicial proceeding. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405].) Such a conclusion is mandated by the policy behind Civil Code section 47 which is to afford litigants the utmost freedom of access to the courts to secure their rights and defend themselves without fear of being harassed by retaliatory lawsuits. (*Woodcourt II Limited v. McDonald Co.* (1981) 119 Cal.App.3d 245, 249 [173 Cal.Rtpr. 836].) Although application of the privilege accorded by Civil Code section 47 usually arises in the context of a defamation action, it has also been applied to other allegedly tortious conduct such as abuse of process (*Umansky v. Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]; *Thornton v. Rhoden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]), intentional infliction of emotional distress (*Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131

---

[6]Civil Code section 47 provides in relevant part: "A privileged publication or broadcast is one made— ... [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, ...:"

Cal.Rptr. 592]), slander of title (*Albertson v. Raboff, supra*, 46 Cal.2d 375); and to the tort Asia seeks to pursue here, intentional interference with prospective business advantage. (See *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 738 [151 Cal.Rptr. 206]; *Lowell v. Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 20 [144 Cal.Rptr. 664, 6 A.L.R.4th 184].)

The facts stated in the proposed amended complaint reveal the only tortious conduct alleged was the filing of a petition for a writ of mandate. This conduct was privileged pursuant to Civil Code section 47, subdivision 2. Accordingly, no cause of action for intentional interference with prospective advantage could be stated on these facts.

The proposed amended complaint sought to add a cause of action for abuse of process. ■ The elements of the tort are an ulterior motive in using the process and use of the process in a wrongful manner. (*Seidner v. 1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 903 [166 Cal.Rptr. 803].) The misuse of the process in some manner not authorized is essential as "'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" (*Spellens v. Spellens* (1957) 49 Cal.2d 210, 232 [317 P.2d 613].) ■ As to this necessary misuse of the process, Asia pled that the Borowskis threatened to use the CEQA action to force Asia to settle the pending house case. In a supplemental declaration, Asia's counsel alleged that Borowskis' counsel, Macomber, had stated to him following a hearing in the CEQA case words to the effect that Asia really ought to settle the house case because if the Borowskis won the CEQA action it would blow Asia's whole subdivision. This statement was inferably a threat to coerce Asia into settling the house case by the use of the CEQA action. Perhaps so, but it was also a privileged statement.

It is recognized that the privilege for publication in a judicial proceeding will be extended to a publication 1) made in a judicial proceeding; (2) with a connection or logical relation to the action; (3) made to achieve the objects of the litigation; and (4) involving the litigants or other participants authorized by law. (*Younger v. Solomon* (1974) 38 Cal.App.3d 289, 301 [113 Cal.Rptr. 113].) The privilege attaches even though the publication was made outside a courtroom, as many portions of a "judicial proceeding" occur outside of open court. (See, *Smith v. Hatch* (1969) 271 Cal.App.2d 39 [76 Cal.Rptr. 350] (letter to judge); *Lerette v. Dean Witter Organization, Inc., supra*, 60

Cal.App.3d 573 (initial demand letter); *O'Neil v. Cunningham* (1981) 118 Cal.App.3d 466 [173 Cal.Rptr. 422] (settlement letter).) The statement at issue bore a clear relation to both the house case and the CEQA action and was made between counsel involved in both cases. The threatening inference aside, the statement was essentially a settlement proposal.[7] As such it was made to achieve the objects of the house suit, in which both attorneys were counsel. Settlements of disputes have long been favored by the courts and attorneys should be accorded wide latitude in making statements during settlement negotiations. (See, e.g., *O'Neil v. Cunningham, supra,* 118 Cal.App.3d 466; *Seidner v. 1551 Greenfield Owners Assn., supra,* 108 Cal.App.3d at pp. 904-905.) Protecting attorneys during the course of the representation of their clients is necessary to promote the litigants securing free access to the courts. (*Lerette v. Dean Witter Organization Inc., supra,* 60 Cal.App.3d at p. 577.) Even considering the settlement proposal was made in a manner which might be considered a veiled "threat" we recognize "this type of language is part of the adversary system, and, as such, is to be anticipated in the course of 'heated battle' between adverse parties to proceedings considered to be within the context of 'judicial proceedings.'" (*Izzi v. Rellas* (1980) 104 Cal.App.3d 254, 264 [163 Cal.Rptr. 689].) As a statement made between counsel during a judicial proceeding regarding settlement, the alleged "threat" was within the privilege of Civil Code section 47, subdivision 2. Accordingly, the plaintiff could not state a cause of action for abuse of process. (*Umansky v. Urquhart, supra,* 84 Cal.App.3d at p. 371.)

Finally, Asia urges any delay in filing its amended complaint was due to the Borowski's failure to have a hearing on their demurrer. Such an argument is without merit. As plaintiff, Asia had the duty to diligently prosecute its case at every stage of the proceedings. (*King v. State of California* (1970) 11 Cal.App.3d 307, 310 [89 Cal.Rptr. 715].) Asia's excuse that it "inadvertantly [sic] lost track of the matter and of the fact the Complaint may need to be amended" is an attempt to shift the blame for Asia's own neglect to respondents. As Asia, through its counsel, knew of the alleged threat during the pendency of the CEQA action and prior to the filing of the malicious prosecution action, there is no reason these facts could not have been pled in the original complaint had plaintiff felt so inclined. It is totally illogical to assert that Asia's lack of diligence in pleading abuse of process was in any way due to respondents.

---

[7]We note there is an element of coercion present in every lawsuit. (*Seidner v. 1551 Greenfield Owners Assn., supra,* 108 Cal.App.3d at p. 904.)

Each cause of action Asia stated in its proposed amended complaint was fatally defective. "It is of course proper to deny leave when the proposed ... amended pleading is insufficient to state a cause of action or defense." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 1045, p. 2622, and cases cited.) We are unable to find arbitrary determination, capriciousness or whimsical thinking in the trial court's ruling denying leave to amend which would amount to an abuse of discretion. On the contrary, the denial of plaintiff's proposed amendment on the basis of the present record was entirely proper.

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied July 12, 1982, and appellant's petition for a hearing by the Supreme Court was denied August 18, 1982.